W. S. BEASLEY v. D. F. BURNETT, JR., W. P. ELLIS, and R. L. MILLINOR

191 So. 459
Division A
Opinion Filed October 10, 1939

*David Lanier* and *H. L. Anderson,* for Appellant.

*R. C. Horne,* for Appellees.

BUFORD, J.—The appeal brings for review order as follows:

"In connection with the hearing in this cause, plaintiff filed motion to require the defendant, D. F. Burnett, Jr., to replead and to file an amended answer in the particulars set out in the motion, this motion being filed December 16, 1938, and a further motion of the plaintiff to require the defendant, W. P. Ellis, to replead and to file an amended answer as to the particulars set out in the motion, this motion being also filed December 16, 1938.

"Also, a motion by the plaintiff praying for process against J. L. Studstill, and compelling him to answer the bill of complaint, together with interrogatories propounded to him, and that he be not discharged until he answered fully the bill of complaint and the interrogatories.

"The Court is of the opinion that the bill of complaint and answer thereto by the defendants Burnett and Ellis is sufficient upon which all the merits of the case may be considered, presented and adjudicated, the real question of this

case being, who is entitled to the tax certificates involved herein, and under the allegations of the bill and the allegations of the answer, the court thinks that the real question at issue herein, as above stated, can be fully presented and adjudicated.

"Therefore, the motion to require these two defendants, Burnett and Ellis, to answer further is overruled.

"Now, as to the motion of the plaintiff relative to process against J. L. Studstill, and compelling him to answer the bill of complaint and certain interrogatories, the court is of the opinion that it clearly appears here that Studstill is neither a proper or necessary party, as far as the bill and allegations of the answer show, the only connection that he had with the matter is the allegation that there was a check signed by him for three thousand odd dollars and deposited with the Clerk by Mr. Ellis, who is a necessary and proper defendant, as is the Clerk, Mr. Burnett, and to require Mr. Studstill to answer or answer interrogatories would simply be going into matters not germane to the issues here and into matters entirely foreign to the cause to be adjudicated.

"Therefore, the motion as regards Mr. Studstill is overruled."

The motion, pursuant to which the order was made, is as follows:

"Comes the plaintiff in the cause above styled, and shows to the court, that by apt amendment as of course of his bill of complaint herein, the plaintiff joined one J. L. Studstill, as a party defendant to the cause; that said Studstill was duly served with summons in chancery requiring his answer to be filed in this cause under the rules of practice on the 7th day of November, 1938.

"That plaintiff propounded certain interrogatories to be answered by the defendant Studstill regarding his interest in the subject matter of this cause, and that the said Studstill

has failed and omitted to appear, or answer, or move to dismiss the bill of complaint in this cause.

"Plaintiff shows to the Court, that he cannot obtain a proper decree in this cause unless, and until the said Studstill shall file his answer to the bill of complaint herein, and also answer the interrogatories propounded to him, the said Studstill.

"Plaintiff, therefore, prays a process of attachment against J. L. Studstill to compel him to answer the bill of complaint and make discovery therein by his answer to the interrogatories propounded to him in this cause, and that said process of attachment do issue instanter against the defendant J. L. Studstill, requiring him to answer fully the matters and things set out in the plaintiff's bill of complaint, and each and every the several interrogatories propounded to him, the said Studstill, and that he be not discharged by the Court unless and until he shall answer fully the bill of complaint, and also the interrogatories so propounded to him."

The bill of complaint, after alleging the names and places of residence of the parties, avers:

"2. For a long time prior to the year 1928, defendant R. L. Millinor, owned the legal title to the lands described in certain tax certificates in a notice of an application for a tax deed, which said notice is appended to and made a part of this bill of complaint, marked plaintiff's Exhibit 'a,' all of said lands lie in the County of Madison, within the State of Florida.

"3. Plaintiff is a creditor of the defendant, R. L. Millinor and is the owner and holder of a mortgage lien upon the greater part of the lands described in plaintiff's Exhibit 'A,' and that defendant Millinor for a long period of time has suffered physical ailments, which incapacitate him to transact business, and that said defendant has no means

other than the title to said lands out of which to pay the moneys owing by the said defendant to the plaintiff.

"4. That on or about the 10th day of December, 1937, plaintiff duly applied to the defendant D. F. Burnett, Jr., who was then, and now, Clerk of the Circuit Court in Madison County, Florida, to purchase the same certificates described in plaintiff's Exhibit 'A' under the provisions of a statute obtaining in the State of Florida, known as the Murphy Act; that defendant Burnett, as Clerk aforesaid then and now, has in his possession and custody, all of said certificates described in plaintiff's Exhibit "A"; that said certificates originally came into the hands and possession of the defendant Burnett, as Clerk aforesaid, by reason of the assessment levied against said lands, the nonpayment of taxes so levied against said lands, and the sale thereof by the Tax Collector of Madison County, Florida, but plaintiff avers that after making a statement of the serial numbers of said certificates, and the description of the lands, and mailing the same to plaintiff at plaintiff's home in Columbia, in the State of Tennessee, the said defendant Burnett failed and omitted to assign and transfer said certificates to plaintiff; that from and after December 10th, 1937, defendant Burnett well knew that it would be necessary for plaintiff to purchase said certificates in order to protect plaintiff's interest in said land, as mortgagee thereof, but with said knowledge and with the intention and purpose hereinafter set forth, the defendant Burnett, Jr., claimed to have sold all of said certificates to one W. B. Ellis on the 16th day of July, 1938, as shown by an exact copy of a letter addressed to R. L. Millinor, signed by the defendant Burnett, dated the 18th day of July, 1938, which is made a part of this bill of complaint, and marked Plaintiff's Exhibit 'B.'

"5. On said 19th day of July, 1938, plaintiff was in the

City of Madison and saw the defendant Burnett and also saw the letter written by the defendant Burnett on the 18th day of July, 1938, and having learned of the pretended sale of the certificates by the defendant Burnett to the said Ellis, plaintiff in company with defendant Millinor, on or about the 19th day of July, 1938, visit the said Ellis who then and there told plaintiff 'You know I have no money of my own, there are other people interested in this matter with me; I will talk with my associates and let you know what can .be done.' and afterwards the defendant Ellis demanded that he be paid Seventeen hundred and seventy-five Dollars to relinquish whatever right he had in the certificates hereinbefore described, and permit plaintiff· ,to buy the same under the provisions of said Murphy Act.

"6. That defendants Burnett Jr., and Ellis, claimed and represented to plaintiff that said Ellis had paid to the defendant Burnett, as Clerk, the sum of Three Thousand, Five Hundred and Fifty Dollars on the 16th day of July, 1938; that said payment had been made by check, but plaintiff shows that in truth and in fact the defendant Burnett never sold said certificates to the defendant Ellis, and that the defendant Ellis did not purchase the same on the 16th day of July, 1938, or at any other time; that the pretended sale of said certificates, which the defendant Burnett, as Clerk aforesaid, claimed to have made to the defendant Ellis was in the belief of plaintiff, in pursuance of an agreement made between the defendant Burnett and the defendant Ellis for the purpose of extorting moneys from the plaintiff; that the defendant Ellis demanded that R. L. Millinor pay to him, the said Ellis, the sum of Seventeen Hundred and seventy-five Dollars in consideration of which payment the defendant Ellis would permit the plaintiff to purchase said certificates under the provisions of the Murphy Act, and when Millinor refused to pay to the de-

fendant Ellis the sum of Seventeen Hundred and seventy-five dollars the defendant Burnett caused a notice of application for a tax deed to be published in a newspaper published in said Madison County, Florida, and the defendant Ellis to acquire title to the lands by a tax deed, as shown by plaintiff's Exhibit 'a' and unless restrained and enjoined from so doing, plaintiff avers that the pretended sale of said certificates, and the issuance of a tax deed to the defendant Ellis will ensue to the defendant Ellis on the 2rd day of October, 1938.

"7. Plaintiff shows that the defendant Ellis is wholly insolvent and a bankrupt; that he did not, in July, 1938, or at any other time near thereto, have funds of his own, or out of his own means could he raise the sum of Three Thousand, five hundred and fifty dollars, which the defendant-ants claim Ellis paid to the defendant Burnett to purchase said certificates, and plaintiff avers it to be true that defendant Ellis never purchased said certificates on the 16th day of July, 1938, or at any other time, and is not the owner of said certificates, but that the same remain and are property of the State of Florida.

"8. Plaintiff further shows that with his attorney, he visited the office of the defendant Burnett, as Clerk of the said Court, on the 14th day of September, 1938, and saw and examined each of the said certificates involved in this cause, and found that the same had never been endorsed by the defendant Burnett, as Clerk, and that none of the said certificates had been delivered by Burnett, as Clerk, to the defendant Ellis, or anyone else, and thereupon, plaintiff again made application in writing to the defendant Burnett, as Clerk, to purchase said certificates under the terms of the Murphy Act, and then and there tendered to said Burnett, as Clerk, the sum of Four Hundred Dollars, which said sum of money was more than sufficient to be deposited by an ap-

plicant for the purchase of said tax certificates under said Murphy Act, but plaintiff avers it to be true, that the defendant Burnett as Clerk then and there refused to accept plaintiff's application for the purchase of said certificates, and refused to accept said Four Hundred Dollars then and there tendered by the plaintiff to the said Burnett, as Clerk.

"9. Plaintiff avers that plaintiff's right to purchase said certificates under the provisions of the Murphy Act, accrued to the plaintiff long prior to the alleged sale of said certificates, which the defendant Burnett, as Clerk, claims to have made to the defendant Ellis, and that plaintiff's right to purchase the same under the provisions of the Murphy Act is superior in point of time, and legal right to any claims, which the defendant Ellis is making of his ownership of said certificates.

"10. Plaintiff further says that the defendant Ellis and the defendant Burnett have been involved in other transactions of the same nature, as exist in this cause, and have forced other land owners in said county to pay to the defendant Ellis, sums of money because of the collusion and conspiracy made and entered into between the defendant Ellis and the defendant Burnett to make a claim of a pretended sale for tax deeds to the said Ellis of certificates covering lands in said county, and that the defendant Ellis admitted to the petitioner that he had been engaged in such practice in the case of other persons.

"11. Plaintiff avers it to be true that the pretended sale of said certificates claimed to have been sold by the defendant Burnett, as Clerk, to the defendant Ellis, described in plaintiff's Exhibit 'A' was never, in fact, made, but that said defendants intending to extort moneys from the plaintiff, are claiming that there was an actual sale of said certificates made by the defendant Burnett, as Clerk, to the defendant Ellis."

It has appeared to us necessary to quote the allegations of the bill so that the issues may be clearly understood by the Bench and Bar.

Upon certain interrogatories having been answered, and those answers having showed that one J. L. Studstill was connected with and a party to the alleged purchase of the tax certificates involved, the said Studstill was made a party defendant to the suit and certain interrogatories were propounded to Studstill after he had been served with process as a defendant. Studstill did not answer the interrogatories which interrogatories were propounded under the provisions of Section 48 of the 1931 Chancery Practice Act.

The allegations of the bill of complaint are sufficient to show an irregular proceeding in regard to the alleged sale of the tax certificates. It is alleged that the face value of the certificates was $3,550.00 and that it was represented to the plaintiff that Ellis had paid that sum for the certificates and yet, it is alleged that Ellis demanded only $1,775.00 from the plaintiff and stipulated that upon the payment of that sum plaintiff would be allowed to redeem his certificates under the Murphy Act.

The bill also in effect alleges that although the certificates were alleged to have been sold and assigned to Ellis, they remained in the office of the Clerk of the Circuit Court unassigned.

We think the Court should have required Studstill to answer the interrogatories. If Ellis bought the certificates and paid the face value of them, he was entitled to have the certificates assigned and delivered to him, but if he merely pretended to buy them with an understanding between himself and the Clerk that he could for consideration paid to him, withdraw his offer to purchase and allow the mortgagee Beasley to proceed to purchase under the Murphy

Act, such arrangement was a fraud on Beasley and was an arrangement not sanctioned by law.

If Ellis was ready, willing and able to purchase the certificates under the provisions of prior existing law as contemplated by Section 13 of Chapter 18296, Acts of 1937, known as the Murphy Act, it was lawful for him to do so provided no application had then been made for the certificates to be sold or redeemed under the provisions of Chapter 18296, the Murphy Act. This Act does not give the applicant any option to purchase the certificates. Under it the certificates are sold to the highest bidder and, therefore, anyone ready, able and willing to buy the certificates is allowed to bid what he is willing to pay for the certificates.

This, of course, applies only to certificates for which application was made prior to the date when the provisions of the Act expired by its own terms.

The question finally to be determined in this cause is whether or not there had been a bona fide sale of the tax certificate involved before the mortgagee, plaintiff here, applied for sale thereof under the Murphy Act. We do not think Section 13 of the Act, *supra*, was meant to authorize a sale of the certificate under other existing law after application for sale under the Murphy Act had been made to the Clerk; and it will also be necessary to determine whether the sale was a bona fide one in which the Clerk received the amount of cash necessary to entitle the purchaser to the assignment of the certificate, or was a fictitious transaction under which the proposed purchaser of the certificate actually paid nothing for it but merely deposited a check so as to constitute himself an apparent purchaser of the certificate, with the intent either to withdraw the check or to use the same as means to force either the owner of the land or a mortgagee of the land to pay the purported purchaser a profit not authorized by law:

The answer of the defendant fails to deny the allegations of the bill of complaint, "that the defendant Ellis demanded that R. L. Millinor pay him, the said Ellis, the sum of $1,775.00 in consideration of which payment the defendant, Ellis, would permit the plaintiff to purchase said certificates under the provision of the Murphy Act."

We know of no authority under which the Circuit Court may require a defendant under penalty to answer a bill of complaint, but Section 48 of the 1931 Chancery Practice Act does contemplate that the Court may require any defendant to answer any pertinent interrogatories filed in accordance with the provisions of that Act.

We think that the interrogatories propounded to J. L. Studstill are pertinent to the issues in this case and that error was committed in denying the motion insofar as it applied to requiring answers to the interrogatories.

It, therefore, follows that the order appealed from must be reversed insofar as it denied the motion to require Studstill to answer the interrogatory.

On final hearing the other defendants may be examined further on the issues.

The order appealed from is affirmed in part and reversed in part, as hereinbefore indicated, the costs to be taxed against the appellees.

So ordered.

TERRELL, C. J., concurs.

THOMAS, J., agrees to conclusion.

CHAPMAN, J., concurs in opinion and judgment.

Justices WHITFIELD and BROWN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.