W. S. Beasley, Appellant, v. D. F. Burnett, *et al.,* Appellees

1 So. (2nd) 260
Special Division A
Opinion Filed March 25, 1941

*H. I. Anderson* and *David Lanier,* for Appellant;
*R. C. Horne,* for Appellees.

Buford, J.—Appeal is from final decree in favor of defendants in a suit wherein plaintiff sought a decree granting "a restraining order by the terms of which the defendant Burnett, as clerk of the circuit court, or in any other capacity, and the defendant W. P. Ellis, be restrained and enjoined from further advertising the lands involved in this cause for a tax deed, as shown by plaintiff's Exhibit 'A'. and from exposing for sale, or selling said lands on the 3rd day of October, 1938, or at any other time, and from as-

signing, or transferring said certificates to any person other than plaintiff, and from doing any act, or thing, which will prevent, or interfere with plaintiff's right to purchase said certificates under the provisions of the Murphy Act, and for such other interlocutory orders and decrees as may be necessary, or which seem meet to the Court to prevent the mischief, which the plaintiff verily apprehends will be done by the defendants unless so restrained, and that the defendant Burnett, by decree of this Court, be required to accept the application of the plaintiff to purchase said certificates under the provisions of the Murphy Act aforesaid, and the plaintiff prays process of this Honorable Court directed to the defendants D. F. Burnett, Jr., as clerk, W. P. Ellis and R. L. Ellinor." ·.

The record shows in effect that on or about December 10, 1937, R. L. Millinor owned considerable real estate in Madison County, Florida, consisting of improved, and perhaps some unimproved, property in the Town of Madison, lots in unincorporated villages, and rural farm and timber lands, upon all of which he was delinquent in the payment of taxes and many tax sale certificates were outstanding. Millinor was in bad financial condition and a kinsman, plaintiff in the court below, had advanced to him large loans of money and taken real estate mortgages to secure the payment of the loans.

This is the second appearance of this case here. See Beasley v. Burnett, 140 Fla. 231, 191 Sou. 459.

The chancellor in disposing of the issues carefully analyzed the evidence and made his findings thereon in the final decree as follows:

"This cause has heretofore been before the Supreme Court on the pleadings by way of interlocutory appeal, Beasley v. Burnett, 191 So. 459, and therein the Court said, in substance, that if Ellis bought the certificates and paid

face value for them, he was entitled to have them assigned to him, but if because of agreement between he and Clark Burnett, the sale was a sham effectuated so that Ellis could demand a consideration for their relinquishment to Beasley, that such would be a fraudulent arrangement and violative of law. Further, that if Ellis so purchased the certificates under other existing law, it was lawful for him to do so, provided there was no prior and pending application for their sale under the Murphy Act. Further, that the main question was, whether or not the sale to Ellis was bona fide, before there was an application for sale under the Murphy Act by Beasley.

"Our Supreme Court having held that 'if Ellis purchased the certificates under other existing law, it was lawful for him to do so, provided there was no prior pending application for their sale under the Murphy Act.' The first question to be determined then, is, did Mr. Beasley have or make a prior sufficient application under the Murphy Act at the time of the sale of the certificates to Ellis. It seems to the Court that the testimony of Mr. Beasley shows within itself that he did not. The record shows that when he first talked to Mr. Burnett on December 10, 1937, that he simply expressed a desire to take up some of the Millinor lands, but he did not know which of the lands he wanted to take up. Therefore, he asked Clerk Burnett to make up a list of the lands and sent to him at his home in Columbia, Tenn., and he would then check them over and advise him what he wanted. On December 30, 1937, Clerk Burnett sent to him the list of the lands together with a Murphy Act request sheet and a letter in which he requested Mr. Beasley to check the lands, sign the request sheet, and return the list and sheet to him, and he would advise him as to the cost of taking them up under the Murphy Act. Did Mr. Beasley do that? The record shows that he did not. Instead, the

clerk never heard a word from Mr. Beasley, until July 18, 1938, more than six months thereafter, when he appeared in Clerk Burnett's office in Madison two days after Ellis had purchased the certificates, on July 16, 1938. Why did Mr. Beasley sit silent for more than six months without replying to the clerk and telling him what he wanted?"

The chancellor then quotes in the decree much of the testimony of Mr. Beasley, which is unnecessary to be quoted here, and then continued:

"So it is clear from Mr. Beasley's own testimony that he did not reply to Mr. Burnett, but waited six months to attend to it, and the reasons were (1) that he thought he had until July, 1939, in which to make application, and he was in no hurry, (2) that he did not know which lands he wanted to take up or leave out, (3) that he decided to wait until 'the normal course of events' carried him back to Florida so he could tell Mr. Burnett what he wanted, (4) that the 'normal course of events' did not bring him back to Florida until July 18, 1938, more than six months after he had received Mr. Burnett's letter and during which time, so far as Mr. Burnett was concerned, he did not open his mouth. The Court presumes that Mr. Beasley must have thought that Mr. Burnett should divine his intents and purposes by some sort of mental telepathy. It is also clear to this Court that Mr. Beasley made no application either verbal or written to Mr. Burnett to sell these lands under the Murphy Act, and that at the time Mr. Ellis bought the certificates Mr. Beasley had no Murphy Act rights out of which he could be defrauded.

"When Mr. Ellis directed advertisement for deed to begin on the certificates he purchased, Mr. Burnett promptly notified Mr. Beasley so he could redeem them if he wanted to before deed issued thereon. Then Mr. Beasley came to Madison on September 14, 1938, and going into Mr. Bur-

nett's office, demanded to be allowed to take up the lands under the Murphy Act although he knew the advertisement for deed was then being published, and to impress his demand, apparently, he got out a roll of hundred dollar bills and peeling off four of them (See R. P. 45) demanded to know if that was enough for him to take up the lands under the Murphy Act. Mr. Burnett told him the lands were being advertised and he could do nothing about it. Mr. Burnett thought Mr. Beasley was trying to bribe him, but the Court does not think so, for after hearing and observing Mr. Beasley, the Court is of the opinion that being a man of large affairs he was accustomed to largely having his way, and to have his wants and desires largely anticipated by those around him, and that the knowledge that his own carelessness and negligence had lost him his opportunity to save a large sum in taxes under the Murphy Act, exasperated him so that he was just 'blowing off steam' in brandishing a roll of hundred dollar bills, or maybe it was not uncommon for him to do that, as there is mention in the record of his being worth a half million dollars, and he must be a man of means for he loaned Mr. Millinor fifteen thousand dollars.

"There is considerable testimony about Mr. Ellis demanding $1775 as his price for relinquishing the $3550 worth of certificates. But there is nothing in the record to show Clerk Burnett had anything to do with that, or would have profited a penny from it. Ellis had Beasley where he could make him pay the full $3550.00 with interest if he wanted to and he knew it. So his price for relinquishing them so Beasley could take them up under the Murphy Act, and even after paying him $1775.00, still save around a thousand in taxes, was fixed by him at one-half of the face value of the certificates. The record shows that Mr. Ellis got Mr. C. P. Kelly in the same box, and made him pay to get

out, but even at that Mr. Kelly saved around a hundred on his tax bill, did not charge Clerk Burnett with fraud and corruption against him because of that. He said the clerk was his friend and helped him out of his predicament by agreeing to take the certificates back if Ellis would relinquish them, then pay Ellis back his purchase money and allow Mr. Kelly to purchase under the Murphy Act. Mr. Burnett proffered to do the same favor for Mr. Beasley. He was not trying to defraud him. He was trying to favor him. This Court has known Clerk Burnett for years. The record shows he has been clerk for more than twenty-five years. The Court knows him to be a man of the highest integrity and honor. Anybody knowing about the character of Madison County citizens knows that a county officer who engaged in such corrupt practices as are charged here, would not remain continuously in an important public office for a quarter of a century.

"The plain facts of the case are that Mr. Beasley had every opportunity to take these certificates up under the Murphy Act if he had wanted to; but he simply sat down on the stool of do nothing, seemingly expecting the clerk to read his mind and guess what his intentions were, and while he was taking his ease, Mr. Ellis found out about the good timber on the lands, and like all speculators, he didn't waste time, he acted promptly, bought up the certificates under a law of which Mr. Beasley was not aware, and it was not fraud, but action by Ellis which deprived Mr. Beasley of waiting any further to decide what he wanted any further to decide what he wanted to do.

"So far as Mr. Studstill is concerned, there is not a word of testimony to show that he conspired with anybody to defraud Mr. Beasley. He simply loaned Ellis the money in the shape of a check, which the clerk knew to be gilt-edge, to buy the certificates. As his security, Ellis gave him a

mortgage and certain assurances as to the timber on the lands in the event he got a tax deed to them.

"Much suspicion is directed by complainant at the fact that Ellis left the certificates with Clerk Burnett and that they were not endorsed over to him at the time of the sale. If Ellis bought them and they were delivered to him, he could have them endorsed any time he so desired, either then, or later, under the law. Clerk Burnett swore that Ellis bought them bona fide and for their full face value as required by law, and that he paid for them with a check signed by J. L. Studstill, made payable to him as clerk, and that he knew the check was as good as cash and accepted it, and so far as this Court is concerned, he believes what Clerk Burnett said about it to be absolutely true. Besides the record shows that Mr. Ellis was a blind man, and that he had been getting the clerk to help him with his papers for years and leaving them with him for safe keeping. In this section, the Court knows that is nothing unusual, for it is the custom of many people to leave their valuable papers with their clerk in the safety of his vault.

"After hearing the testimony carefully, and then again going over the entire transcript of it, the Court is of the opinion that Mr. Beasley did not make any application under the Murphy Act either verbally or in writing which gave him any right out of which he could be defrauded, and that he has completely failed to sustain the charges of his bill of complaint, as to fraud and collusion between the defendants, or any of them, and as to the sale of the certificates being a sham sale for the purpose of extorting money out of him. The record, in the opinion of the Court, shows that if Mr. Beasley lost any right to proceed under the Murphy Act, it was because of his own cocksureness, negligence and carelessness, and not because of being defrauded out of it as he charges."

So, the Court vacated the temporary injunction theretofore issued and dismissed the bill of complaint at the cost of the plaintiff.

The findings of the chancellor are amply supported by the evidence as presented in the record here and, therefore, the decree should be affirmed upon the authority of our opinion and judgment entered herein on the former appeal cited, *supra*.

It is so ordered.

Affirmed.

BROWN, C. J., CHAPMAN and ADAMS, J. J., concur.