**PENINSULA LAND COMPANY, a Florida Corporation, et al., v. GRAEME K. HOWARD.**

6 So. (2nd) 384 En Banc
October 31, 1941 Rehearing Denied February 24, 1942

Thos. B. Adams, and Edwards & Edwards, for appellants.

Russel Snow, and Lloyd Campbell, for appellee.

CHAPMAN, J.:

On appeal from a final decree of foreclosure of certain described tax certificates entered for the plaintiff below by the Circuit Court for Brevard County, Florida, several questions are submitted by counsel for the respective parties to this Court for a decision. We have concluded, after hearing oral argument at the bar of this Court, and after a careful study of the briefs and the record, that the case can or may be decided here by an answer to the question, namely: From a consideration of the entire record, can it be said that the defendants below, appellants here, adduced sufficient testimony to establish their application to the Clerk of the Circuit Court of Brevard County, Florida, so as to entitle them to the provisions and benefits of Chapter 18296, Acts of 1937, Laws of Florida, commonly referred to as the Murphy Act?

Section 2 of the Act makes it the duty of the several Clerks of the Circuit Courts of Florida to offer for

sale certain enumerated tax certificates when written request to him is made by any person. The written request shall contain a legal description of the land covered by the certificate sought to be purchased. The sale of the certificates is required to be at public outcry and to the highest and best bidder for cash.

Section 3 of the Act makes it the duty of the several clerks of the circuits courts, upon receipt of the application provided for in Section 2, to immediately give notice by publication in a newspaper that on a day and hour named that he will sell at public outcry to the highest and best bidder for cash the said tax certificates covering the lands described in the notice and the certificates. Notice of the sale shall by the clerk be mailed to the last known address of the owner of the property.

Section 4 of the Act provides that clerks of the circuit courts of Florida to whom any application is made, shall require such applicant to deposit with him (prior to publishing the notice in a newspaper) a sufficient amount of money to cover all costs incident to making such sale. Section 10 of the Act directs the disposition of such a surplus that may exist after the sale. The two year privilege allowed for redemption under Chapter 18296, *supra,* expired June 9, 1939. See Bice v. City of Haines City, 142 Fla. 371, 195 So. 919. Section 13 recognized and specifically excepted from the operation thereof the several provisions of Section 992 C.G.L. It is under the latter Section that the plaintiff below obtained title to the tax certificates involved in this suit. We have had occasion, from time to time, to pass on given provisions of Chapter 18296, *supra.* See Messer v. Lang. 129 Fla. 546, 176 So. 548; Beasley v. Burnett,

140 Fla. 231, 191 So. 459; State ex rel. Hunter v. Culbreath, 140 Fla. 634, 192 So. 814; Bice v. City of Haines City, 142 Fla. 371, 195 So. 919; Beasley v. Burnett, 146 Fla. 421, 1 So. (2nd) 260; Ivey v. State ex rel. Watson, 3 So. (2nd) 345, 147 Fla. 635, opinion filed July 19, 1941, and yet unreported.

Simultaneously with and made a part of Chapter 18296, Acts of 1937, the Legislature made specific findings of fact, viz: (1) following the 1925 land boom tax assessments on real estate in Florida greatly increased and in many instances four or five times the former assessed values; (2) a tremendous increase in millage levied thereon; (3) the collapse of the boom in 1926 depressed values of all property in Florida; (4) the boom and world wide depression caused Florida many financial reverses; (5) for these several reasons delinquent taxes on real estate in Florida showed an increased value exceeding $97,000,000.00; (6) these lands have been certified to the State for the non payment of taxes and render no support in revenue to the State of Florida; (7) the face value of the tax certificates in many instances exceeded the actual value of the land; (8) the tax certificates held against said lands are not worth the face value thereof; (9) the tax certificates are dead, frozen and depreciated assets; (10) the amount of real estate off the tax roll impedes the progress and functioning of the State, county and municipal governments and it is impossible to so function in the future; (11) it is to the general welfare to sell the certificates and thereby place the lands back on the tax roll.

Courts in the construction of statutes will look to the condition of the country to be affected by the Act as well as the purpose declared, to ascertain the

legislative intent, and will read all parts of the Act together. See Amos v. Conkling, 99 Fla. 206, 126 So. 283. In applying a statute, the language used, the purpose designed to be accomplished, and the means adopted for accomplishing the purpose should be considered in ascertaining the true and lawful legislative intent. See Tylee v. Hyde, 60 Fla. 389, 52 So. 968. It is clear by the Act that the legislature desired and intended to place these lands back on the tax roll. The method of cancelling the tax certificates at public outcry on application of any person to the Clerk was designed to eliminate dead, frozen and depreciable assets in the form of tax certificates based on inflated values, and the benefits and privileges conferred by the terms of the Act should be liberally construed in behalf of the appellant or owners of real estate incumbered with tax certificates therein enumerated, as was by the Legislature intended.

We therefore conclude that an application for the sale of tax certificates by a person under the provisions of Chapter 18296, *supra,* contemplates: (a) a written request containing a description of land covered by such certificate sought to be purchased and the same made or presented to the clerk; (b) the costs of advertising shall by the applicant be deposited with the clerk, or a satisfactory financial arrangement be made with the clerk for the payment of such costs; (c) the duties imposed on the clerk by the terms of the Act shall be by him diligently and faithfully performed or discharged. When an application to the clerk for the sale of certificates as provided for by the terms of the Act is pending or made, then the authority or power of the clerk to sell and transfer title to tax certificates under the provisions

of Section 992 C.G.L. is suspended and clearly inoperative. See Beasley v. Burnett, 140 Fla. 231, 191 So. 459.

Whether or not an application for the sale of the tax certificates involved in the case at bar was made or pending with the Clerk of the Circuit Court of Brevard County on May 16, 1939, must be determined by the testimony adduced. Numerous incomplete applications had been lodged with the Clerk and the volume thereof overtaxed the accomplishments of the deputies assigned to this task. The appellants obviated this difficulty by employing and privately paying a Mr. Butt on March 30, 1939, whose services were approved by the Clerk or the deputy in charge, to make the necessary search for certificates and compute the amount due. The written application was prepared by Mr. Butt for the appellants, and left among the files in the Clerk's office and a deposit with the Clerk of costs was necessary to make the application conform to the Act, and these costs were left with the Clerk on May 17, 1939, which were later by the Clerk returned. The appellants contend that their application conformed to the requirements of the Act and the provisions of the Act made it the duty of the Clerk to advertise the certificates. The Clerk declined so to do, and on May 16, 1939, sold to the plaintiff below the certificates here involved under the provisions of Section 992 C.G.L. It is contended that this sale is illegal and unauthorized, and the assignee thereof failed to obtain title thereto.

Mr. Howard, the plaintiff below, owns a winter home located at Cocoa Beach, Brevard County, Florida, and likewise has business connections among some of the large industries of the North, with an

office in New York City, where a considerable portion of his business is transacted. He became interested in the progress and development of Cocoa Beach, a small incorporated village. The appellants have title to approximately three hundred acres of undeveloped land located within the incorporated limits of Cocoa Beach, which is the subject of this litigation. Mr. Pulsipher is the mayor-commissioner and real estate dealer and was employed by Mr. Howard to acquire for him title to the three hundred acres of land located within the incorporate limits of Cocoa Beach. Mrs. Pulsipher is city tax collector.

Mr. Howard employed counsel at Cocoa to assist in obtaining title to these lands and directed him to collaborate with Mr. Pulsipher.

Mr. Gus Edwards and family owned a controlling interest in the two appellant corporations. Mr. Pulsipher, in April, 1939, obtained purchasers for two lots owned by Edwards, or his corporation, for the sum of $250.00 each. The purchasers were H. L. DeGive and Mrs. Gertrude Cannon. These transactions were not closed until some time in June, 1939, and the closing thereof, according to appellants' counsel, was intentionally delayed by Mr. Pulsipher.

Under date of April 29, 1939, Mr. Pulsipher wrote to Mr. Howard and advised him to buy the tax certificates and foreclose the same and in this manner acquire title to the Edwards land here involved; that it was imperative that immediate steps be taken to buy the tax certificates, because Mr. Edwards, while pressed for cash, could raise and would raise the necessary amount to comply with the Murphy Act and that he (Pulsipher) knew where Edwards would get the cash (meaning from the sale of the two lots

to his clients) and delayed the closing of the sales. Pertinent portions of the letter are viz:

"As you know. Under what is known as the 'Murphy Act' anyone can ask for the advertising and placing at auction of any State-County tax certificate which is State owned (and most all are) and at the sale bid $1. for each certificate, plus the cost of advertising and a few fees and then can secure the certificate, no matter for what amount it was issued.

"In the matter of the two mile river frontage, back of Cocoa, Beach, extending from the Cocoa road South to the corporate limits I figure there must be about twenty certificates out and that under the Murphy Act Edwards could secure these for between $300.00 and $400.00. He has not done this, manifestly, because he did not have the money, but he will before the time expires, which will be around two weeks from now. *I know where he expects to get the cash.*

Of course anyone could go in and outbid him at the sale but the purchaser would have to wait two years before he could foreclose, and the right of redemption runs during that time, only 3% interest being charged.

"I have every reason to believe that he is laying the foundation for taking advantage of the Murphy Act and probably the papers are ready as soon as he comes across with the cash, which he will have to do.

"From my own knowledge of the law and the situation I am convinced that the only safe way, if this party is to be eliminated from the situation is to have the certificates bought outright, which may take as much as two or three thousand dollars, but in case of foreclosure the only chance for loss would be the attorney's fees, which the law does not cover. I am

satisfied Mr. Snow will agree with me as to all this and also that no time is to be lost in buying these certificates. It is because of this short time that I am writing you thus.

"Another element, none too reassuring, is that Edwards has just entered suit in the Circuit Court as against the Town of Cocoa Beach, to have his acreage removed from the corporate limits. If he is successful it might mean that he would be relieved of payment of back town taxes, through Court order.

"I had a call from Mr. Wuesthoff recently. He asked specially as to any mortgage against the lands on the back. My best information is that there are none.

"Then we discussed the tax certificate proposition and I advised him about as I am writing you. I suggested that no time be lost and that he see Mr. Snow to verify my conclusions. I have every reason to believe he did see Mr. Snow and that he wished to know your attitude. In our talk Mr. Wuesthoff said he thought the certificates should be bought and foreclosed at once. He appeared to mean it, too, but I apprehend that, at his age, he dislikes to wade into something of this sort, except that he is keenly interested in seeing that you good people who have bought and built or intend to build are protected.

"Since the lands are amply worth several thousand dollars if properly planned, and since the amount involved would not be large my suggestion would be to have your attorney, here, ascertain just what the cost would be and be in position to buy the certificates at once, shutting off any chance of their being caught up under the Murphy Act. Two or three thousand dollars might be needed.

"If the amount involved seemed more than you and your associates wished to put up the acreage affected could be less, leaving off, say the lower half-mile. Or if you cared to reach it, provided he thought the resistance would not be too great, he might extend the certificate purchase to any ocean fronts in the line South.

"Since there probably would be a 'leak' if inquiry was made, I have not looked into things at Titusville to ascertain the amounts. I think an inquiry should call for immediate information and should be followed by a purchase. If suit was entered and owners redeemed before sale the only loss to you would be the attorney's fees. Some person who would not be identified with you could be the dummy plaintiff in the suit." (Emphasis supplied).

A secondary suggestion or method of acquiring the Edward's title to the lands in which Mr. Howard was interested and located within the City limits of Cocoa Beach, was to buy some mortgages then against the same as given by Mr. Edwards or his corporations, but when their abstractor checked the records none could be found. Mr. Howard, some few days after the receipt of the Pulsipher letter, wired the necessary funds to buy the certificates and authorized not only their purchase but their foreclosure by his attorneys. The abstractor employed by the Howard agents to ascertain the amount due on the tax certificates, utilized the work sheets prepared by Mr. Butt when working for Mr. Edwards, as the same were then on file in the clerk's office. The amount was determined and on the 16th day of May, 1939, the same assigned by Mr. Conway, a deputy clerk, and delivered to Mr. Howard's attorney, and their check for the sum of

$1822.00 accepted as payment, while the clerk's office, in the usual manner of business, delayed the delivery of similar tax certificates for a period of ten days when paid for by check. In the case at bar, Mr. Conway accepted the check and delivered the certificates and disregarded the usual ten day period. Mr. Edwards testified that he saw the certificates in the clerk's office on the morning of May 17th, and that they were later delivered to Mr. Howard's attorneys. The clerk called an officer of the bank to learn if the check was good and was advised that the check would be paid.

An exhibit appearing in the record is a copy of an answer of the Clerk of the Circuit Court of Brevard County, Florida, prepared by his attorney at a time when the check in the sum of $1822.00 was in his possession and had not been presented to the bank for payment. The answer of the Clerk was to a bill of complaint seeking to restrain the Clerk of the Circuit Court from delivering the certificates and was to be heard on the morning of the 19th of May, 1939, by the Circuit Judge. The copy of the answer made by the Clerk admitted as true paragraph 3 of the bill of complaint in substance alleging that the appellants here made application to the Clerk for the sale of the tax certificates involved in this suit. Paragraph 4 of the answer admitted as true the allegations of paragraph 4 of the bill of complaint in substance that the appellants submitted statements of tax certificates prepared under Chapter 18296, *supra,* and the same would be immediately advertised. Paragraph 5 of the answer admits the tender of the sum of $95.23, costs necessary to advertise, and the same was tendered on May 17, 1939, at 10:00 o'clock A. M.

It is settled law that the acts of an agent, within the scope of his real or apparent authority, bind the principal. See Hartford Fire Ins. Co. v. Brown, 60 Fla. 83, 53 So. 838. Mr. Howard adopted the suggestions made in the letter to him by Pulsipher. Mr. Pulsipher was out to obtain title to the tract through the tax certificate purchase and foreclosure method. When the title had been acquired, he would be entitled to a commission to be paid him by Mr. Howard. Mr. Edwards was sorely pressed for cash and if the deal for the two lots which his clients were buying could be immediately closed, he would receive $500.00 and could then finance his then pending application to the Clerk. The sale of the lots through Mr. Pulsipher was not closed until June, and *after* the tax certificates had been assigned to Mr. Howard. Counsel drafted an amended charter for Cocoa Beach at the request of Mr. Pulsipher and was introduced at the 1939 Session of the Legislature. The proposed amended charter authorized the taking of property for the non payment of city taxes. Mr. Edwards testified that the proposed legislation was directed at him and was another step on the part of Mr. Pulsipher to acquire title to the Edwards' property without paying therefor the market price.

"Counsel for the appellants insist that because of the aforesaid acts of trickery, deception and unfairness on the part of the plaintiff or his agents they are entitled to relief in a court of equity." They cite Dale v. Jennings, 90 Fla. 234, 107 So. 175 (text page 90 Fla. 247) viz:

". . . any wilful act . . . relating to the subject matter in litigation that would be condemned and declared wrongful by honest and fairminded men is

sufficient to make his hands unclean. Courts and text-writers have repeatedly declared this to be the law, and that one who has acted in bad faith, resorted to trickery and deception, or been guilty of fraud, injustice or unfariness will appeal in vain to a court of conscience, even though in his wrong-doing he may have kept himself strictly within the law. Weeghan v. Killefer, 215 Fed. Rep. 289, L.R.A. 1915A 820; Brown v. Brown, 66 Conn. 493, 34 Atl. Rep. 490; C. F. Simmons Medicine Co. v. Mansfield Drug Co., 93 Tenn. 84, 23 S. E. Rep. 165; Harton v. Little, 188 Ala. 640, 65 South Rep. 951."

It may be unnecessary for a disposition of the case at bar to apply the doctrine of unclean hands to the facts here presented, as contended for by counsel for appellant. The record discloses an honest, sincere and *bona fide* intention on the part of Mr. Edwards, acting for himself and corporations, to obtain the privileges and benefits of the Murphy Act. It is clearly demonstrated by his employment at his own expense on March 30, 1939, of a suitable person to calculate the amount due from the records in the Clerk's office. The work sheets contained a description of the land and the items due, and a letter dated April, 1939, addressed to the Clerk bearing Edwards' signature, was among the work sheets. He was delayed in obtaining the amount due under additional descriptions promptly supplied. Any reasonable person employed in the office examining the Edwards' land records from March to May 17, 1939, would be convinced that he desired the benefits and privileges of the Act, and when the exact descriptions and amounts were completed, the necessary costs were tendered.

The power and authority of the Clerk to sell and transfer the tax certificates here involved under the provisions of Section 992 C.G.L. at a time when there was pending in his office a *bona fide* application to obtain the benefits and privileges of Chapter 18296, and the costs incidental thereto required by Section 4 thereof were tendered in support of the application within a reasonable time after ascertaining the correct amount thereof, had the legal effect of suspending the operation of Section 992 C.G.L. until the final disposition of the then *bona fide* application to receive the benefits and privileges of Chapter 18296 *supra.* See Beasley v. Burnett, 140 Fla. 231, 191 So. 459; 146 Fla. 421, 1 So. (2nd) 260.

For this reason the decree appealed from is reversed with directions for further proceedings in the lower court not inconsistent with this opinion.

It is so ordered.

BROWN, C. J. WHITFIELD, and TERRELL, JJ., concur.

BUFORD, THOMAS and ADAMS, JJ., dissent.