Gordon S. **BARTON** and William Douglas Walbert, Plaintiffs,

v.

**CITY OF EUSTIS, FLORIDA, et al., Defendants.**

No. 76–25–Civ–Oc.

United States District Court,
M. D. Florida,
Ocala Division.

July 13, 1976.

Ben R. Patterson, and Jerry G. Traynham, Tallahassee, Fla., for plaintiffs.

Lennon E. Bowen, Eustis, Fla., and Norman F. Burke, Orlando, Fla., for defendants.

## ORDER

CHARLES R. SCOTT, District Judge.

The Court has before it several motions by defendants, which were argued at the outset of the hearing on plaintiffs' motion for a preliminary injunction. The Court will deal with the various motions individually, construing some of them alternatively on behalf of defendants. The standard which must be met in order to grant a motion to dismiss for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), is clear: only if, after viewing the allegations of the complaint as true, it is certain that there is no conceivable set of facts which the plaintiffs can produce to support their claims may the action be dismissed. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Cook & Nichol, Inc. v. Plimsoll Club*, 5 Cir., 451 F.2d 505 (1971). On a motion to dismiss for lack of jurisdiction, however, Fed.R.Civ.P. 12(b)(1) and (2), the burden remains upon the plaintiffs, with the Court considering the allegations of the complaint as true, to show that the limited jurisdiction of a federal district court has been properly invoked. *McNutt v. GMAC*, 298 U.S. 178, 182, 56 S.Ct. 780, 80 L.Ed. 1135 (1935).

Defendant, the City of Eustis, has moved the Court to dismiss this action with respect to it for lack of both subject-matter jurisdiction and personal jurisdiction over it. One of the federal jurisdictional bases upon which plaintiffs proceed is the Civil Rights Act of 1871, 42 U.S.C. § 1983 (1970). It is indisputable that the City of Eustis is not a person over whom the Court has any jurisdiction in an action under 42 U.S.C. § 1983, for purposes of any relief, whether compensatory, injunctive, or declaratory. *City of Kenosha v. Bruno*, 412 U.S. 507, 513, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Monroe v. Pape*, 365 U.S. 167, 192, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). If Section 1983, then is the only jurisdictional route by which plaintiffs can bring their federal claims to court, it is clear that the Court has no jurisdiction in this case over the City of Eustis. The City so argues, and additionally contends that in the absence of any federal jurisdiction over it, all putative pendent jurisdictional claims over it, under state law, should be dismissed as well. Plaintiffs, on the other hand, assert that

they invoke the Court's jurisdiction over the City for their federal claims, via federal question jurisdiction, 28 U.S.C. § 1331 (1970). At the hearing on the preliminary injunction, the Court deferred ruling on this particular motion, allowing plaintiffs until July 19, 1976, in which to file a brief in support of their position, and defendant City of Eustis until July 29, 1976, in which to file its brief in opposition to plaintiffs' position and in support of its own.

In this case, plaintiffs raise six separate claims. First, plaintiffs claim that they have a de facto property interest in their continued employment, which has been taken from them without the fundamental due process guaranteed by the Fourteenth Amendment. Second, plaintiffs claim that they have a de jure property interest in their jobs, established under city ordinance 409 and Fla.Stat. § 112.531, et seq., of which they have been deprived without the due process guaranteed by the Fourteenth Amendment. Third, plaintiffs claim that they have a liberty interest under the Fourteenth Amendment which has been infringed by a debilitating stigma concerning their discharges from employment, without any compelling justification having been demonstrated in a forum of Fourteenth Amendment due process. Fourth, plaintiffs claim that they have a right to organize for collective bargaining purposes, guaranteed by the First Amendment freedoms of speech and association, that has been denied by defendants. Fifth, plaintiffs claim that their de jure property interest under the city ordinance and the state statute was taken from them without the procedural due process provided under that statute, Fla.Stat. § 112.532(4) (Supp.1974). Sixth, plaintiffs claim that they have a right to organize for collective bargaining purposes, guaranteed under the state constitution and implementing statutes, Chapter 447, Florida Statutes (Supp.1974). The individual defendants contend that plaintiffs' federal claims fail to state claims within the Court's jurisdiction and upon which relief can be granted; and, that being the case, the Court has no proper federal basis upon which to exercise pendent jurisdiction over

plaintiffs' state law claims which, in any event, are defectively presented anyway.

## FIRST AND SECOND CLAIMS

Defendants contend that the recent decision of *Bishop v. Wood*, —— U.S. ——, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), 44 U.S. L.W. 4820 (1976), controls disposition of these claims, requiring their dismissal. That case and this one have many factual similarities. A police officer of the City of Marion, North Carolina was terminated after nearly three years of employment by the city manager, on the recommendation of the chief of police. The city had an ordinance that provided for dismissal of a permanent employee if he failed to perform his work to the standards required by his job classification, or if he were negligent, inefficient, or unfit to perform his duties. The ordinance further provided that a "discharged employee shall be given written notice of his discharge setting forth the effective date and reasons for his discharge if he shall request such a notice." *Id.* at ——, 96 S.Ct. at 2077, at 4821, n. 5. In the absence of any state decisions construing the city ordinance, the Supreme Court, affirming the Fourth Circuit Court of Appeals, accepted the district judge's interpretation of the ordinance, especially because of his lengthy experience in practice, and as a judge, in the state. *Id.* at ——, 96 S.Ct. at 2078, 2079 at 4821–22. The district court judge construed the ordinance counterfacially "as granting no right to continued employment but merely conditioning an employee's removal on compliance with certain specified procedures." *Id.* at ——, 96 S.Ct. at 2078, at 4821.

■ Unmistakably, the decision in *Bishop v. Wood, supra,* was founded upon the legal effect of the city ordinance's construction by the district court. The consequences of that decision are mutually exclusive and distinct from other Supreme Court decisions on the question of property interests in employment under the Fourteenth Amendment. *Id.* at ——, 96 S.Ct. at 2078, at 4821, n. 8; *Arnett v. Kennedy*, 416 U.S. 134, 94

S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Perry v. Sinderman,* 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). In those cases, the Supreme Court found de jure and de facto property interests in employment that were entitled to the due process guaranteed by the Fourteenth Amendment. In this case there is no settled decisional law that the state statute, Fla.Stat. § 112.532(4), notwithstanding its seemingly plain facial meaning, grants no property interest of any kind to the class of persons for whom it defines its application. Neither is there any settled decisional law that the ordinance of the City of Eustis, providing for dismissal for causes subsequently enumerated, confers no property interest of any kind to employees that it earlier recognizes as permanent. To the contrary, the Fifth Circuit Court of Appeals, *Thurston v. Dekle,* 531 F.2d 1264, 1272 (5th Cir. 1976), recently affirmed this Court's holding that the ordinance of another Florida city, allowing termination only for cause, "creates a constitutionally protectable property interest." *Id.* Moreover, the present judge of this Court in this case, with over 50 years' experience in the Bar of this State, six years' experience as a judge in the state circuit court, and ten years' experience as a judge of this Court trying diversity cases under the substantive law of this State, decided *Thurston v. Dekle* when it was before this Court. Based on all of this, the Court cannot say that as a matter of law plaintiffs' first and second claims failed to invoke the Court's limited federal jurisdiction and could not be proven by plaintiffs under any conceivable set of facts. Consequently, the motion to dismiss plaintiffs' first and second claims with respect to the individual defendants, will be denied.

### THIRD CLAIM

■ Defendants again contend that *Bishop v. Wood, supra,* is dispositive of this claim, requiring its dismissal. In that case, the Supreme Court held that, in the absence of public communication of the reasons for discharge, the plaintiff had not been subjected to a scandalizing stigma that would severely damage his reputation and, there-fore, he had no liberty interest that had been deprived. —— U.S. ——, ——, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684, 691, 44 U.S.L.W. 4820, 4822 (June 10, 1976). In this case, however, the Court cannot say that plaintiffs cannot present any conceivable set of facts that might prove their claim of stigmatizing injury to their legitimate liberty interests; neither can the Court say that this claim is not cognizable under its federal jurisdiction. Consequently, the motion to dismiss plaintiffs' third claim, with respect to the individual defendants, will be denied.

### FOURTH CLAIM

■ Plaintiffs claim that the First Amendment freedoms of expression and association guarantee their right to organize for collective bargaining purposes. Although defendants have not directly opposed this claim, the Court is mindful of recent decisions by the Supreme Court in *Elrod v. Burns,* —— U.S. ——, 96 S.Ct. 2673, 49 L.Ed.2d ——, 44 U.S.L.W. 5091 (June 28, 1976), and *Hudgens v. NLRB,* 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976). In *Elrod v. Burns,* the court declared that "the prohibition on encroachment of First Amendment protections is not an absolute. Restraints are permitted for appropriate reasons." *Id.* —— U.S. at ——, 96 S.Ct. at 2683, 44 U.S.L.W. at 5095. At the same time, the court upheld the rights of employees, in political patronage positions, to individual political expression and association. *Id.* —— U.S. at ——, 96 S.Ct. at 2689, 44 U.S.L.W. at 5099. Similarly, in *Hudgens v. NLRB,* the court held that the First Amendment freedoms do not provide a right to solicit for or against labor organizations on private property. Moreover, the court upheld the right of a city to impose reasonable time, place, and manner limitations on the use of its property, public property, for First Amendment purposes; in fact, it may even forbid altogether the use of some of its property for First Amendment purposes. *Id.* 424 U.S. at 520, 96 S.Ct. at 1037, 47 L.Ed.2d at 207. What a city, as a form of state action, may not prohibit is certain kinds of expression

and association, discriminating on the basis of specific subjects and views. *Id.* In short, "the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of Chicago v. Mosley,* 408 U.S. 92, 95, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972). *See also Erznoznik v. City of Jacksonville,* 422 U.S. 205, 214, 95 S.Ct. 2268, 2275, 45 L.Ed.2d 125, 134 (1975). The Court cannot say that plaintiffs are unable to present any facts to establish that defendants, city officials, have discriminatorily denied plaintiffs' exercise of their First Amendment freedoms of expression and association solely because of their pro union content and character. Hence, the motion to dismiss plaintiffs' fourth claim, with respect to the individual defendants, will be denied.

### FIFTH CLAIM

■ Defendants argue that Fla.Stat. § 112.531, *et seq.,* provides a protection for law enforcement officers against unlawful interrogation, but that it does not confer any statutory rights against any other conduct by an employer or an employer's agents. Although certain subsections of the statute are less clear than others, there are subsections that are unmistakably straightforward in their language. For example, Sections 112.532(1) and (4) provide:

All law enforcement officers employed by any employing agency shall have the following *rights and privileges*:

*(1) Rights of law enforcement officers while under investigation.* Whenever a law enforcement officer is under investigation and subject to interrogation by members of his agency *for any reason which could lead to disciplinary action, demotion, or dismissal, such interrogation shall be conducted under the following conditions*:

. . . . .

*(4) Notice of disciplinary action.* No *dismissal, demotion, transfer, reassignment, or other personnel action which might result in loss of pay or benefits or which might otherwise be considered*

*a punitive measure* shall be taken against any law enforcement officer *unless* such law enforcement officer is *notified of the action and the reason or reasons therefor prior to the effective date of such action.* (emphasis supplied)

The plain and simple language appears to create both a substantive right in a law enforcement officer's employment, and a guarantee of procedural due process to safeguard that right. In the absence of settled decisional law that the statute despite this straightforward facial language does not create such rights and guarantees, the Court cannot say that this claim fails to invoke the Court's pendent jurisdiction. Neither can the Court say that there is no set of facts which plaintiffs could present to prove this claim. Consequently, the motion to dismiss plaintiffs' fifth claim, with respect to the individual defendants, will be denied.

### SIXTH CLAIM

Defendants argue that even if plaintiffs should raise a viable claim within the Court's pendent jurisdiction, under Fla.Stat. § 447.201, *et seq.,* the Court should dismiss this claim because plaintiffs have an available administrative remedy pending, which they have not exhausted. Plaintiffs commenced this action on June 1, 1976. On June 10, 1976, plaintiffs filed an unfair labor practice charge, pursuant to Fla.Stat. § 447.503, with the Public Employees Relations Commission, the state administrative agency charged with administering the statute. Even if defendants' contention that plaintiffs have failed to exhaust their available administrative remedies were correct, it is by no means certain that such a drastic measure as dismissal of this claim is justified. The Court's pendent jurisdiction does not vanish because plaintiffs have also invoked state administrative procedures and remedies. To protect plaintiffs' standing before both this Court and the state administrative agency, a better procedure might be for the Court to abstain from ruling on this claim pending the outcome of

state administrative proceedings. *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 501, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

 Abstention might well be warranted if the provisions of Fla.Stat. § 447.-503 were the only state statutory remedy available to plaintiffs. When the Florida Legislature enacted Fla.Stat. § 447.201, *et seq.*, in 1974, however, it also enacted Fla. Stat. §§ 447.17(1) and (2), providing for civil compensatory and injunctive remedies to "any person who may be denied employment or discriminated against in his employment on account of membership or non-membership in any labor union or labor organization." That provision parallels closely the unfair labor practices enumerated in Section 447.501(1)(a), (b) and (2)(a), (b), for which the administrative remedies under Section 477.503 are available. It must be presumed that the Florida Legislature, in enacting these provisions, intended the statute to be a self-consistent whole, without surplusage or redundancy. *Florida Jai Alai, Inc. v. Lake Howell Water & Reclamation Dist.*, 274 So.2d 522, 524–25 (Fla. 1973); *State v. Putnam County Development Authority*, 249 So.2d 6, 10 (Fla.1971); *State v. Hayles*, 240 So.2d 1, 3 (Fla.1970); *Foley v. State*, 50 So.2d 179, 184 (Fla.1951); *Ideal Farms Drainage Dist. v. Certain Lands*, 154 Fla. 554, 19 So.2d 234, 239 (1944); *Peninsula Land Co. v. Howard*, 149 Fla. 772, 6 So.2d 384, 386 (1942); *Forehand v. Manly*, 147 Fla. 287, 2 So.2d 864, 867 (1941); *Marshall v. Hollywood, Inc.*, 224 So.2d 743, 749 (2d D.C.A.Fla.1969); *Arvida Corp. v. City of Sarasota*, 213 So.2d 756, 760 (2d D.C.A.Fla.1968); *Pinellas County v. Woolley*, 189 So.2d 217, 219 (2d D.C.A.Fla. 1966); *Vocelle v. Knight Bros. Paper Co.*, 118 So.2d 664, 667 (1st D.C.A.Fla.1960); *City of St. Petersburg v. Earle*, 109 So.2d 388, 393 (4th D.C.A.Fla.1959). Moreover, the right to organize for collective bargaining purposes is fundamental under Florida law, guaranteed by the state constitution. Fla.Const., art. I, § 6 (1968); *Dade County Classroom Teachers' Ass'n v. Ryan*, 225 So.2d 903, 905, and n. 1 (Fla.1969). It is a possible and permissible interpretation of

Fla.Stat. § 447.17(2), therefore, that it creates jurisdiction in a state circuit court (and in a federal district court by pendent jurisdiction) for private parties, rather than the state administrative agency, to bring actions for injunctive relief in extraordinary situations as a matter of right prior to setting in motion the administrative procedures under Section 447.503. The House of Representatives proposed a similar provision in the 1947 Taft-Hartley Amendment to the National Labor Relations Act. H.R. 3020, 80th Cong., 1st Sess., Section 12(b) (1947). In the absence of settled decisional law to the contrary, the Court cannot conclude that plaintiffs have failed to invoke its pendent jurisdiction under Fla.Stat. §§ 447.17 and 447.201, et seq.; and it is in no way certain that plaintiffs cannot present facts to prove this claim. As a result, the motion to dismiss plaintiffs' sixth claim, with respect to the individual defendants, will be denied.

 Finally, defendants urge the Court to dismiss this case because they are armed with a qualified, good faith immunity under the common law, unless plaintiffs can show (1) that objectively defendants acted in deliberate disregard of their actual or constructive knowledge of plaintiffs' indisputable constitutional rights; or (2) that subjectively defendants acted with a malicious intent to deprive plaintiffs of their constitutional rights. *Wood v. Strickland*, 420 U.S. 308, 321–22, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). It is beyond dispute that public executive officials, acting within their official capacity, are protected by a qualified immunity from liability, in the absence of demonstrated bad faith. *Scheuer v. Rhodes*, 416 U.S. 232, 247–48, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Pierson v. Ray*, 386 U.S. 547, 557, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). It is equally indisputable, however, that because of the Supremacy Clause, allegations that public officials acting by virtue of authority under state law have deprived a person of his rights secured under the federal Constitution state cognizable claims deserving of judicial determination, and should not be dismissed. *Scheuer v. Rhodes*,

*supra*, at 249–50, 94 S.Ct. 1683. Consequently, this ground is more appropriately raised as an affirmative defense in an answer to bring the case to issue, rather than as a basis to dismiss it. Accordingly, the motion to dismiss must be denied.

Therefore, it is

ORDERED:

1. The motion to dismiss all claims, with respect to the individual defendants, is hereby denied.

2. Plaintiffs are hereby allowed up to, and including, July 19, 1976, in which to file a memorandum of law on the motion of defendant, the City of Eustis, to dismiss this action with respect to it.

3. Defendant, the City of Eustis, is hereby allowed up to, and including, July 29, 1976, in which to file its memorandum of law in support of its motion to dismiss, and in opposition to the position of plaintiffs.

4. The individual defendants, and the City of Eustis, in the event that its motion to dismiss should be denied, are hereby allowed up to, and including, August 23, 1976, in which to answer the complaint.

DONE AND ORDERED at Jacksonville, Florida, this 13th day of July, 1976.