**Gary MURPHY, Plaintiff-Appellant, Cross-Appellee,**

v.

**CITY OF FLAGLER BEACH, and Daniel H. Bennett, Defendants-Appellees, Cross-Appellants.**

**Gary MURPHY, Plaintiff-Appellant,**

v.

**FLAGLER BEACH, etc., et al., Defendants-Appellees.**

Nos. 83–3273, 83–3743.

United States Court of Appeals, Eleventh Circuit.

May 28, 1985.

Joseph T. Garlovsky, Nathan G. Dinitz, Daytona Beach, Fla., for plaintiff-appellant, cross-appellee.

C. Allen Watts, Daytona Beach, Fla., for defendants-appellees, cross-appellants.

Before RONEY and CLARK, Circuit Judges, and SIMPSON, Senior Circuit Judge.

SIMPSON, Senior Circuit Judge:

Gary Murphy began working as a police officer for the City of Flagler Beach, Florida, ("the City") in July 1977. In 1979, he received a letter from Police Chief Daniel H. Bennett, dated January 18, which informed him that he would be fired if he did not voluntarily resign. An attachment to the letter alleged three specific reasons for Bennett's decision: (1) Murphy had violated Florida law by recklessly displaying a firearm in arresting one McSorely on January 3, 1979; (2) on November 22, 1978, Murphy left the city unprotected for one hour by leaving Flagler Beach, while he was the sole officer on duty, to answer an ambulance call in Flagler County; and, (3) he had refused two requests to supplement his report in a burglary investigation "Case # 791–32 (Prosser Case)". The rest of the attachment contained a more generalized statement of additional charges, including complaints from outside sources, and described a procedure for Murphy to follow:

I have received numerous reports of your attitude with the Flagler County Sheriffs Office. I have talked with them in reference to this and they are reluctant to work with you because they are afraid that you are going to seriously injury someone. Therefore they would be involved in a Civil suit or facing criminal charges.

I have also checked your reliability and creditability with the County Court and the State Attorney's office. I have been informed when your name appears on a case, they are reluctant to prosecute.

You question almost every decision that I make and when I explain my reasons to you, you go to the other officers and make some smart comments about how you are going to take me to a higher authority if I dont do things your way.

I feel that you have corrupted the morale in this department and the working relationship with the Flagler County Sheriff's Office.

Therefore all doubt must be resolved in favor of this department and I am asking for your resignation effective immediately. If you refuse to resign you will be terminated immediately. You will receive all pay of vacation holiday's that are due you.

If you desire to be terminated then you may request in writing to me by 5:00 pm on 1/23/79 to have a hearing before the City Commission. If you desire a hearing, then it will have to be on the agenda with-in 30 days of your termination.

(Record Vol. 1, pp 10–11) (Spelling, punctuation and grammar as in original).

Murphy appeared in Bennett's office at the police station, declined to resign, and requested a hearing. Bennett informed Murphy that he was not entitled to a hearing on internal affairs and fired him while surreptiously recording the meeting on audio tape. Murphy then retained an attorney who mailed Bennett a request for a witness list, a more particular statement of the charges, and a hearing before the Complaint Review Board (review hearing) under Florida's Law Enforcement Officers' Bill of Rights, ("Police Bill of Rights").[1] Fla.Stat.

---

1. Fla.Stat. § 112.532 (1979) provides in pertinent part:

All law enforcement officers employed by any employing agency shall have the following rights and privileges:

(2) Complaint review boards.—A complaint review board shall be composed of three members: One member selected by the chief administrator of the agency; one member selected by the aggrieved officer; and a third member to be selected by the other two members. Agencies having more than 100 law enforcement officers shall utilize a five-member board with two members being selected by the administrator, two members being selected by the aggrieved officer, and a fifth member being selected by the other four members. The board members shall be law enforcement officers selected from any state, county, or municipal agency within the county.

§§ 112.531. *et seq.* (1979). When Bennett failed to reply, the lawyer mailed an identical request to the City Attorney who refused to comply. The City Attorney suggested that Murphy could be heard at the next City Commission meeting. The attorney called the City Clerk and placed Murphy's hearing on the agenda for the next meeting, scheduled for March 1, 1979. Immediately before the meeting, Bennett gave Murphy's attorney a stack of documents, including additional charges, that he intended to introduce against Murphy. The commissioners initially announced that only Bennett, Murphy and Murphy's attorney would be allowed to speak, notwithstanding that Murphy had brought many witnesses. After some discussion, a few witnesses were allowed to speak and the remainder were asked to stand up and be recognized as Murphy's supporters. No witnesses were ever placed under oath. The commission took no vote or other action on Murphy's termination. However, during the meeting, Bennett produced the secret tape recording of the meeting at which Murphy was fired but made no use of the tape.

Murphy then filed suit in district court against Bennett and the city under 42 U.S.C. § 1983, the United States Constitution and the Police Bill of Rights. The complaint alleged that Bennett's secret recording was a violation of Florida's Security of Communications Act, Fla.Stat. §§ 934.03 *et seq.* ("Communications Act"); that Murphy's dismissal was unjustified and in bad faith; that the process by which he was dismissed violated rights guaranteed by the Police Bill of Rights; that the city was vicariously liable for Bennett's actions; and that the above actions by defendants were committed under color of state law and deprived him of a property interest in his employment which was protected by the due process clause of the Fourteenth Amendment ("§ 1983 claim"). See 42 U.S.C. § 1983.

The case was tried before a jury. The court entered a directed verdict for $1.00 in nominal damages on Murphy's claim that the defendants had violated statutory due process rights by their failure to grant him a Complaint Review Board Hearing. The court directed a verdict for the defendants on claims for punitive damages and injury to Murphy's reputation. The remaining issues were submitted to the jury on special interrogatories. They found that Bennett had acted in good faith, and with just cause in firing Murphy, but that he had violated the Communications Act in making the secret recording. The jury awarded one dollar against the City, as required by the directed verdict, for the violations of the Police Bill of Rights and one thousand and one dollars as compensatory damages against the City on instructions that Murphy would be able to recover the fees that his attorney charged him for attending the city commission meeting. The jury also returned separate one hundred dollar statutory damage awards against Bennett and the City for the Communications Act violation, see Fla.Stat. § 734.10 (1979). The district judge entered final judgment on the verdict.

After denying Murphy's motions for a new trial, the court heard, and, in a second final judgment, granted in part, his requests for an award of attorney's fees under 42 U.S.C. § 1988 and for taxation of costs. Murphy filed separate appeals of the initial judgment on the jury verdict, Case No. 83–3273, and the subsequent judgment awarding fees and costs, Case

(3) Civil suits brought by law enforcement officers.— Every law enforcement officer shall have the right to bring civil suit against any person, group of persons, or organization or corporation, for damages, either pecuniary or otherwise, suffered during the performance of the officer's official duties or for abridgment of the officer's civil rights arising out of the officer's performance of official duties.

(4) Notice of disciplinary action.—No dismissal, demotion, transfer, reassignment, or other personnel action which might result in loss of pay or benefits or which might otherwise be considered a punitive measure shall be taken against any law enforcement officer unless such law enforcement officer is notified of the action and the reason or reasons therefor prior to the effective date of such action.

No. 83–3743. This court consolidated the two appeals on February 1, 1984.

In Case No. 83–3273 Murphy argues that the trial judge erred in refusing to allow him to introduce evidence that Bennett frequently left the city for unacceptable reasons during his duty hours; prejudiced the trial by making inappropriate comments in the presence of the jury and improperly instructed the jury that they could consider testimony that Chief Bennett consulted with his attorney in firing Murphy as evidence of good faith, in the absence of evidence to support the instruction. The City and Bennett have filed a cross appeal in which they argue that the district court erred in directing a verdict that Murphy had a right to a Complaint Review Board hearing under the Police Bill of Rights; in failing to direct a verdict that plaintiff had failed to prove vicarious liability for Bennett's surreptitious recording; in failing to direct a verdict for the defense on the § 1983 claims, aggravating the error by giving vague, incomplete and otherwise erroneous instructions on plaintiff's right to due process which were tainted by the language the court employed in directing the verdict on the state (Police Bill of Rights) claim.

Murphy's appeal in Case No. 83–3743 argues that the district judge erred in failing to award him $993.00 of his claimed costs to cover expenditures for depositions, witness and mileage fees because the witnesses deposed and subpoenaed were never called at trial.

### CASE NO. 83–3273

The first point that Murphy argues is that the judge erred in refusing to allow him to elicit testimony that police officers regularly left the City during duty hours without prior permission or later complaints from Chief Bennett, and that Bennett himself would often drive to a beach outside the city limits to view nude sunbathers and would invite other officers on duty to accompany him on those trips. The appellees argue that the point has not been preserved for appeal because Murphy made no contemporaneous offer of proof and the substance of the evidence sought was not revealed by the context of the questions asked. We disagree with the appellees; they have stated a half truth.

■ Murphy made an initial attempt to elicit the testimony in his adverse examination of the assistant police chief. The defense objected on grounds of relevancy and the court sustained the objection before the substance of the evidence sought could be revealed by a leading question or other device.[2] Murphy made no offer of proof at that time. However, a conference was later held on evidentiary questions. At that conference, Murphy made an offer of proof in anticipation of eliciting the evidence from Bennett or other witnesses he would call who had knowledge of the facts. The court again sustained the objection. The purposes of the contemporaneous objection and proffer requirements of Fed.R.Evid. 103(a) are to give the trial judge a chance to correct errors which might otherwise require a new trial and to give him a chance to reevaluate his ruling in the light of the evidence to be offered and to allow the reviewing court to determine if the exclusions affected the substantial rights of the party offering it. *Robison v. Shapiro*, 646 F.2d 734 (2d Cir.1981); *Fortunato v. Ford Motor Co.*, 464 F.2d 962, (2d Cir.) *cert. denied*, 409 U.S. 1038, 93 S.Ct. 517, 34 L.Ed.2d 487 (1972). Murphy's actions were clearly sufficient to serve the purposes of Rule 103(a). We therefore reach the merits of his argument.

■ A trial judge's rulings concerning the admissibility of evidence are reversible only where the appellant can show that the judge abused his broad discretion and that the decision affected the substantial rights of the complaining party. *Pesaplastic, C.C., v. Cincinnatti Milacron Co.*, 750 F.2d 1516 (11th Cir.1985); *O'Donnell v. Georgia Osteopathic Hospital, Inc.*, 748 F.2d 1543 (11th Cir.1984). The parties have cited no authority as to the relevancy of

---

**2.** See quotation from Record, Vol. 4, pp. 229–31, *infra.*

the evidence. The closest case that we have found is not controlling. In *Richardson v. McClung*, 559 F.2d 395, 397 (5th Cir.1977), a police officer, who had been fired for willful mistreatment of a prisoner, alleged that the real reason for his discharge was his participation in union activities. The former Fifth Circuit concluded that there was no error in excluding, as irrelevant, the plaintiff's testimony that no other police officer had been discharged for mistreatment of a prisoner. The sole argument that he advanced in favor of admissibility was that the excluded testimony, " 'would make the fact that his dealings with the Fraternal Order of Police were the cause of his discharge more likely than his alleged mistreatment of a prisoner.' " *Id.* at 396–97 (quoting brief). Though Richardson and Murphy each charge that the court abused its discretion in excluding evidence which would tend to show that the authorities fired him on a pretextual claim of misconduct, and each argues that he should have been allowed to testify that no one else had been discharged for similar acts, the cases are distinguishable.

■ The opinion in *Richardson* reveals no predicate to establish the relevance of the evidence that plaintiff sought to have admitted. We must assume that the former Fifth Circuit decided the relevancy *vel non* of Richardson's proposed testimony in the absence of a proper predicate (e.g. evidence that other officers had, in fact, mistreated prisoner, that the officials knew of the mistreatment and took no action to discipline the officers). Murphy, on the other hand, testified that Bennett not only knew that other officers had left the City during duty hours, but he himself had absented himself for purposes which are facially more questionable than Murphy's call and encouraged others to do the same. The evidence that Murphy sought to introduce was relevant to a basic issue of his claim of bad faith on the part of Chief Bennett (i.e., that he fired Murphy for actions that he did not in fact consider mis-

conduct requiring discharge).[3] We therefore find that the district judge erred in excluding it. We do not reverse the case for retrial on this evidentiary error alone, however, but because of the cumulative effect of that error in the entire trial of the issue of Bennett's good faith.

■ Murphy next complains that the trial judge erred in making prejudicial comments when his attorney asked for a five minute recess so that he could examine a copy of the City Charter in preparation for his cross-examination of a City Commissioner and in ruling on the evidentiary questions discussed *supra*. Murphy alleges that the remarks concerning the recess were highly prejudicial because the judge described his attorney's request as "highly ridiculous":

> THE COURT: This is highly ridiculous. This is the last trial you're going to have before me, but this is no way to conduct a trial, to stop in the middle of it and take a recess after a long weekend, three days, to go through a document to ask a witness questions. We'll take five-minute recess, then you will come back and take your place in the jury box.

The trial judge was obviously angry and his words were perhaps ill chosen. We do not, however, find that this isolated incident constitutes prejudicial or reversible error. Though the appellant cites *United States v. Candelaria-Gonzalez*, 547 F.2d 291 (5th Cir.1977) as authority that "[a] trial judge's derogatory comment made before the jury that trial counsel was suggesting something 'ridiculous' was grounds for reversal," we find no error approaching the extreme facts of that case. In *Candelaria-Gonzalez* the trial judge gratuitously and repeatedly disparaged a criminal defendant's attorney and commented in response to counsel's first objection in the trial "I have never heard of such an objection. Show me your authority for any such ridiculous assumption." The incident of which Murphy complains is, in contrast, an isolated one and the comment made by the

**3.** Cf. *Marabale v. H. Walker & Associates*, 644 F.2d 390, 397 (5th Cir.1981) (facially valid criteria unevenly applied viewed as pretext for illegal discrimination).

judge addressed the attorney's conduct but not his credibility.

■ We see no possibility under the facts of this case that the judge's brief expression of anger could have prejudiced the jury. See, *Williams v. Hoyt*, 556 F.2d 1336 (5th Cir.) *cert. denied*, 435 U.S. 946, 98 S.Ct. 1530, 55 L.Ed.2d 544 (1977). We are less confident that there was no prejudice in other comments that the judge made, in the presence of the jury, while discussing the merits of Murphy's attempt to introduce evidence of Bennett's misconduct. We must view these comments in context:

Q. And Chief Bennett wrote in that memo of your termination that you were on an ambulance call out of the City?

A. Yes, sir.

Q. Have you ever seen Chief Bennett out of the City?

A. Many times.

Q. Can you explain the circumstances of when you have seen Chief Bennett—

THE COURT: We're not trying Chief Bennett. We can't try but one case at a time. We're not going to go into every time he left the City and what his business was....

MR. GARLOVSKY: It's on good faith, though, Your Honor.

THE COURT: I cannot see how it's relevant....

\*      \*      \*      \*      \*      \*

Q. Were there occasions while you were on duty that he asked you to come over to his car where he had some binoculars?

A. Yes, sir, there was.

Q. Can you explain that circumstance about Chief—

MR. WATTS: Your Honor, I am going to object to this whole line of inquiry.

THE COURT: I don't see where it has any relevance whatsoever. If its about some time he talked to him about his duties, okay. But *I've said we're not going into anything about Chief and what he may have done except with reference to these questions presented*

*to the Court here. No charges lodged against the Chief. The Chief is not being tried except on these issues with reference to this man's termination.*

MR. GARLOVSKY: Except for the defense that they acted in good faith, Your Honor.

THE COURT: Well, good faith with reference to this.

MR. GARLOVSKY: Okay, I feel like I can show that by other conduct, Your Honor.

THE COURT: I have ruled against you.

MR. GARLOVSKY: Okay.

THE COURT: *Any malice that the Chief has shown against this man or bias or prejudice, you can show. But we are not going to try the Chief on what this person or you or someone else perceives to be that he did something or this or that or some that other way.*

(Record Vol. 4, pp. 229–31) [emphasis supplied].

The comments aggravated the error of the evidentiary ruling. The jury heard all of the evidence of Bennett's bad faith after hearing instructions (i.e. the comments) that Bennett was not on trial. Though the error might have been mitigated by a clarifying instruction that the plaintiff requested, the court refused to give any instructions until the end of trial. By that time, the prejudicial effects that the comments necessarily had on the jury's perceptions of the evidence were no longer curable by a simple instruction on the elements of Murphy's cause of action and Bennett's defenses.

We note further that there is merit in Murphy's third argument that the trial of the issue of good faith was prejudiced by an erroneous instruction that, because there was a conflict in Florida law whether a policeman was entitled to a hearing to contest his termination, the jury could consider the fact that Bennett consulted with his attorney as evidence of his good faith.

Murphy argues that there is no evidence to support the instruction.

■■■■ The trial judge was correct that in 1983, the year of the trial, there was a conflict between the published opinions of courts sitting in Florida whether the Police Bill of Rights granted an office a right to a Complaint Review Board hearing to contest his firing. *Compare, Migliore v. City of Lauderhill,* 415 So.2d 62 (Fla. 4th D.C.A. 1982) *with West v. Department of Criminal Law Enforcement* 371 So.2d 107 (Fla. 1st D.C.A.1978) *and Barton v. City of Eustis,* 415 F.Supp. 1355 (M.D.Fla.1976) (opinion construing statute in the absence of state precedent). The judge was also correct that Bennett's testimony showed that he had, consulted the city attorney:

Q. Okay. Now, you stated that when Gary Murphy came to your office on January the 18th you gave him an opinion on whether the Police Officers Bill of Rights applied or not?

A. Yes, I did.

Q. And what was your opinion?

A. I told him that the violations that he was accused of in his letter was strictly violations of in-house policy procedure. And under the Attorney General's opinions, the policy and procedure in relation to the Police Officers Bill of Rights, it did not apply for him to have a police review board at this time.

Q. Were you familiar with the Attorney General's opinion on the subject?

A. Yes, sir, I was.

Q. Had you reviewed that opinion?

A. Yes, sir, I had.

Q. Had you reviewed that opinion with the City Attorney?

A. Yes, I had.

Q. Did the City Attorney concur in your evaluation of the situation that the Bill of Rights did not apply or that that aspect of the Bill of Rights requiring a complaint review board did not apply in this situation? ... [an objection to the question was sustained by the court before Bennett could give an answer.] (Record vol. 4, pp. 328–29).

However, we agree with Murphy that the instruction should not have been given. Evidence that a defendant has consulted with his attorney is of no probative value as to issues of good faith in attempting to meet Constitutional or other legal requirements in the absence of evidence of the substance of the advice that the defendant received from his attorney or, at the very least, some evidence that he acted in conformance with his attorney's advice. Any holding to the contrary could only be made in total ignorance of the unfortunate fact that clients often act in defiance of their attorney's advice or seek advice only in an attempt to evade their legal responsibilities. The prejudicial effect of the instruction is obvious.

The appellees argue that any error in the trial of the issue of Bennett's good faith is necessarily harmless because the jury awarded Murphy only one dollar in nominal damages against the City for denying him a hearing on the charges against him, and therefore, we must assume that he has at most suffered the loss of a one dollar verdict against Bennett. Even if we ignore the intangible, declaratory value a jury verdict against the police chief would have for the discharged officer, we must reject the argument. Though we have focused on the issue of Bennett's good faith, the judge's erroneous evidentiary rulings and prejudicial comments affected the jury's verdict not only as to Bennett's state of mind but also as to whether he had credibly testified that there were grounds to justify his firing Murphy. Further, the jury instructions, to which the defense raised no objections, included grounds for liability and elements of damage which applied to Bennett but not to the City. We cannot, therefore, conclude that the sole result of the prejudicial error committed below was the loss of one dollar in nominal damages. We conclude that the cumulative effect of the errors discussed above requires a retrial to determine whether Bennett acted in good faith and whether the dismissal was justified.

### THE CROSS APPEAL

■ The City has raised one meritorious issue in its cross appeal. The jury found that plaintiff had established by a preponderance of the evidence that there was a pattern or habit of illegal recording in the police department and that responsible City officials had knowledge of it and took no action. On the basis of this evidence the jury awarded statutory damages of one hundred dollars. The City argues that there is no evidence to support the finding of vicarious liability. We agree. There was no evidence that the City knew that Bennett had done any illegal recording. The evidence shows only that certain City officials knew that the City had purchased recording equipment for Bennett and that City employees had installed the tape recorder in a desk on City property. This evidence is insufficient to impose vicarious liability under Florida's Communications Act. *See, Armstrong v. Southern Bell Telephone & Telegraph Co.*, 366 So.2d 88 (Fla. 1st D.C.A.1979) (telephone company had no liability under Communications Act for furnishing equipment which could be used to make illegal recording).

■ The remaining arguments state that the district court's rulings on motions for directed verdicts were erroneous in that they assumed the existence of a state-created property interest in police employment (property interest) and a statutory due process right that Florida law does not recognize and further argue that these errors of law were repeated and aggravated when the district judge issued confusing jury instructions on Murphy's Fourteenth Amendment rights. Bennett and the City argue that the directed verdicts and instructions conflict with *Migliore v. City of Lauderhill*, 431 So.2d 986, 987 (Fla.1983), an opinion that the Florida Supreme Court issued nine months after the conclusion to the trial in this case. The defendants raised no objections to the rulings and instructions of which they complain. We may therefore only review the record for plain error. Fed.R.Civ.P. 50, 51. We do not reach the merits of these arguments; the defendant's affirmative conduct below forbids us to do so.

The transcripts and memoranda filed in the district court reveal that the judge and the parties were well aware of a conflict of authority whether a police officer in Murphy's position had a statutory right to a hearing before a Complaint Review Board and a state created property interest in his employment that was protected by the due process clause of the Fourteenth Amendment. The plaintiff argued that *Barton v. City of Eustis*, 415 F.Supp. 1355 (M.D.Fla. 1976) and *West v. Department of Criminal Law Enforcement*, 371 So.2d 107 (Fla. 1st D.C.A.1978) both recognized the existence of the rights he was asserting under Florida law. The City argued that *Migliore v. City of Lauderhill*, 415 So.2d 62 (Fla. 4th D.C.A.1982) was controlling and supported its argument that a police officer was not entitled to a Complaint Review Board hearing to contest his dismissal.

The district judge ruled that the court would follow *West* and *Barton*. The judge then informed the parties that he intended to direct a verdict for Murphy on his statutory due process claim and discussed the possibility of directing a verdict in his favor on the Fourteenth Amendment claim as well. The plaintiff's lawyer responded that the defense had threatened to appeal any directed verdict issued on the constitutional claim. The plaintiff expressed a desire to avoid any appeal which could be prevented by an agreement to submit to the jury the question whether the hearing before the city council met due process requirements. The judge responded that he would not submit the question to the jury unless both sides waived their rights to a directed verdict. Both parties then waived their rights to a directed verdict on the constitutional claim and the defense expressly agreed to abide by the judge's decision to direct a verdict on the statutory due process claim. Directed verdicts were entered and the jury instructions were given in reliance upon that agreement.

The defendants, having bargained for a jury verdict, now seek to avoid not only the

consequences of the verdict but have appealed questions that they expressly waived below, arguing errors of law that they invited in the process of striking an agreement. On appeal they have neither informed the court of the agreement nor offered any reason why this court should hear any argument presented in defiance of the very purpose for which the agreement was entered.

The limits of the general appellate jurisdiction of Florida's District Courts of Appeal are geographically distinct. Fla.Stat. §§ 35.01 *et seq.* (1981). The defendants' agreements with the court and the plaintiff were, in a sense, a choice of law. We will not now relieve them of their choice simply because the verdict and the subsequent opinions of Florida's Supreme Court have proven that choice unfortunate. See, *R.P. Farnsworth & Co. v. Tri-State Construction Company* 271 F.2d 728 (5th Cir.) *cert. denied,* 362 U.S. 941, 80 S.Ct. 807, 4 L.Ed.2d 770 (1960); *American Cyanamid Co. v. Sparto* 267 F.2d 425 (5th Cir.1959). To do so would be to allow the defendants to defy the very purpose of their bargain. We hold that Bennett and the City are estopped to assert error in the directed verdicts entered, and the jury instructions given, by the district court.

## CASE NO. 83–3743

■ Murphy argues that the district court erred in refusing to award costs for his deposition of the City Attorney and for mileage and witness fees for witnesses who were not called at trial. The record reveals that the costs of deposition were disallowed because the City Attorney was not called as a witness and the plaintiff made no use of the deposition at trial. The court also denied reimbursement of fees for witness attendance, mileage and service of process that Murphy paid to procure the attendance of eight witnesses who were not called at trial. The record of the hearing on Murphy's application for costs and the order subsequently issued, reveals that the court applied blanket rules that no costs shall be awarded for expenses incurred in procuring the presence at trial of witnesses who were not called or for depositions which are not used at trial. We believe that the application of such blanket rules are an abuse of (or a failure to exercise) the court's discretion in this case. See *Newman v. A.E. Staley Manufacturing Co.,* 648 F.2d 330 (5th Cir.1981). Such costs are best controlled by the party who would oppose them rather than by the district court. The City Attorney and the other witnesses were listed on the defendants' witness sheet. Murphy subpoenaed the defendants' witnesses to assure their availability as rebuttal witnesses should the testimony trial reveal the need to compel their testimony. The costs could have easily been avoided by timely notice to the plaintiff that the witnesses would not be called by the defense. The deposition of the City Attorney was of no use to the plaintiff at trial because defendant Bennett failed to present testimony that he conducted himself with the advice of legal counsel. Bennett presented the defense of good faith reliance upon legal advice. The plaintiff was justified in anticipating that the defense would be competently and completely presented and in deposing the City Attorney accordingly. The plaintiff should not absorb the costs of the deposition simply because Bennett failed to present evidence necessary to establish his asserted defense.

We REMAND the judgment awarding costs for a meaningful exercise of the trial judge's discretion in the liberal award of costs. See, *Dowdell v. City of Apopka,* 698 F.2d 1181, 1189–92 (11th Cir.1983).

## CONCLUSION

We AFFIRM the judgment awarding Murphy $100.00 in damages against Bennett for his violation of the Communications Act. (The judgment was not contested on appeal). We AFFIRM the judgment entered on a directed verdict awarding nominal damages for the City's violation of statutory rights granted Murphy by the Police Officer's Bill of Rights. We AFFIRM the judgment awarding $1001.00 in

**632**

compensatory damages against the City for the denial of a due process hearing. We REVERSE the judgment acquitting Bennett of liability and REVERSE the judgment awarding Murphy $100.00 in damages against the City on a finding of vicarious liability for Bennett's Communications Act and REMAND the case for retrial of those issues.

CASE NO. 3743

We REMAND the judgment awarding costs for reconsideration in the light of our observations supra.