657 So.2d 574 (1995)
Nancy Jean BENOIT and Lellia Jane Ledoux, Plaintiffs-Appellants,
v.
William Kim ROCHE, et al., Defendants-Appellees.
No. 94-715.
Court of Appeal of Louisiana, Third Circuit.
June 14, 1995.
Edward J. Fonti, Lake Charles, James Edward Hopkins, Sulphur, for Nancy Jean Benoit et al.
L. Paul Foreman, Lake Charles, for William Kim Roche et al.
James R. Nieset, Lake Charles, for Delchamps, Inc.
David Andrew Fraser, Lake Charles, for Allstate Ins. Co.
Before KNOLL, THIBODEAUX, COOKS, SAUNDERS, JJ., and BERTRAND,[*]J. Pro Tem.
*575 KNOLL, Judge.
Plaintiffs, Nancy Jean Benoit (Benoit) and Lellia Jane LeDoux (LeDoux), two former employees of Delchamps grocery store # 106, located in Sulphur, Louisiana, filed suit against their former employer, Delchamps, Inc. (Delchamps), and the management team at Delchamps store # 106, William Kim Roche (Roche), Ron Biggs, and Kenneth Ardoin.[1] The plaintiffs presented, inter alia, claims for invasion of privacy and violations of the Louisiana Electronic Surveillance Act, La.R.S. 15:1301 et seq. Both Roche and Delchamps moved for summary judgment; the district court granted summary judgment only to Delchamps for these claims. The sole issue on appeal is whether the district court properly granted summary judgment to Delchamps. We reverse and remand.

Facts
In March of 1991, Roche, the manager of the Delchamps store where the plaintiffs worked, placed an electronic surveillance device, albeit a nursery monitor,[2] in the employee break room. To fulfill his managerial duty to investigate and prevent pilfering by store employees, Roche stated that he placed the electronic surveillance device in the employee break room to deter and warn one employee whom he suspected of stealing. However, Roche maintained that he could not get the electronic surveillance device to work, but that its presence alone was sufficient to accomplish his purpose of letting one particular employee know that he was under surveillance and being watched. According to Roche's testimony, the listening device remained visibly in the employee break room for less than 24 hours. After one of his employees inquired about the presence of the device in the employee break room, Roche replied that it was an "air filter." Upon discovery of Roche's surveillance activity, a Delchamps supervisor subsequently disciplined Roche for unprofessional conduct. Roche admitted that he purchased the electronic surveillance device with his own money and without Delchamps' consent or knowledge.
Plaintiffs, Benoit and LeDoux, presented an altogether different story describing Roche's purported clandestine activities involving the nursery monitor. Using affidavits from co-employees and their own deposition testimony, Benoit and LeDoux argued that Roche and his management team placed the electronic surveillance device in the employee break room because they wanted to eavesdrop and spy on their personal conversations. They further asserted that the listening device was fully operational, intercepted employee conversations, and was placed above a locker in the employee break room for almost a week.
Benoit additionally argued that the Delchamps management personnel at store # 106 routinely monitored her personal telephone conversations.[3] In his deposition, Roche denied monitoring his employees' personal telephone conversations. However, Roche freely admitted that he knew of other assistant managers who routinely listened to his employees' personal telephone conversations. As Roche stated in his deposition, "Well, it was real bad when I first came to the store."
The record shows that the telephone system at Delchamps store # 106 uses only one telephone line. This single telephone line supports three telephone extensions: one in the manager's office, one in the produce department, and one in the bakery/deli department. *576 All incoming calls ring in the manager's office. If a call is for an employee in the vicinity of the other two extensions, the management personnel then tell the recipient of the call with a shout or an electronic "buzzer" to pick up one of the other extensions. Because the phone system does not have a "hold" function, the management personnel must actively listen and remain on the line to determine whether one of the other extensions has picked up the phone. Further, when a person desires to make a phone call from any of the extensions, he must first pick up the phone and risk interrupting an on-going conversation to discover if anyone is using Delchamps store # 106's only telephone line.

Louisiana's Electronic Surveillance Act
Plaintiffs argue that Roche's clandestine use of an electronic surveillance device in the employee break room and the management's telephone monitoring practices at Delchamps store # 106 constitute violations of their right to be free from unwarranted electronic surveillance as articulated in the Electronic Surveillance Act, La.R.S. 15:1301 et seq. The language used in the Electronic Surveillance Act is taken directly from the federal version in 18 U.S.C. § 2510 et seq. When a state adopts a federal statute as its own, federal jurisprudence is non-controlling, but useful and persuasive authority in the interpretation of the state enactment. Louisiana Power & Light Co. v. United Gas Pipe Line Co., 493 So.2d 1149 (La.1986); Standard Oil Co. v. Collector of Revenue, 210 La. 428, 27 So.2d 268 (1946).
Both Louisiana's Electronic Surveillance Act and its federal counterpart, commonly known as the Omnibus Crime Control and Safe Streets Act of 1968, primarily regulate and define the lawful use of electronic surveillance devices by law enforcement officials to monitor criminal activities. However, both statutes extend broadly beyond the criminal field to regulate and define the lawful use of electronic surveillance devices and monitoring between private persons.[4] To accomplish the purpose of protecting persons from unlawful invasions of privacy, both Louisiana's Electronic Surveillance Act and the Omnibus Crime Control and Safe Streets Act of 1968 authorize a civil damages cause of action. La.R.S. 15:1312; 18 U.S.C. § 2520; see also United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974).
The civil damages cause of action in Louisiana's Electronic Surveillance Act and its federal counterpart allows a plaintiff to recover actual damages, punitive damages, attorney's fees, and costs if he is able to prove that his wire or oral communication has been unlawfully intercepted, disclosed, or used in violation of the Act. La.R.S. 15:1312; 18 U.S.C. § 2520.

Summary Judgment
Appellate courts review summary judgments de novo, under the same criteria that governs the district court's consideration of the appropriateness of summary judgment. See Schroeder v. Board of Sup'r, 591 So.2d 342 (La.1991) (citing GATX Aircraft Corp. v. M/V Courtney Leigh, 768 F.2d 711, 714 (5th Cir.1985); McCrae v. Hankins, 720 F.2d 863, 865 (5th Cir.1983); 10 Wright, Miller & Kane, Federal Practice and Procedure, Sec. 2716, at 125 (Supp.1991)). A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966. On a motion for summary judgment, evidence and materials must be viewed in the light most favorable to the party opposing the motion. Schroeder, 591 So.2d 342.
However, a motion for summary judgment is not to be used as a substitute for trial. Odom v. Hooper, 273 So.2d 510 (La.1973). Rather, summary judgment should be used sparingly and cautiously. Boatner v. Our Lady of Lourdes Medical Ctr., Inc., 609 So.2d 1214 (La.App. 3 Cir.1992), writ denied, 612 So.2d 106 (La.1993). Moreover, a district court should not grant a motion for summary judgment because it believes that *577 the party opposing the motion has little chance of succeeding at trial. Self v. Walker Oldsmobile Co., 614 So.2d 1371 (La.App. 3 Cir.1993).[5]
In the case sub judice, the district court granted summary judgment to Delchamps for both of the plaintiffs' claims brought pursuant to the Electronic Surveillance Act. In its oral reasons for judgment, the district court concluded that Delchamps was not vicariously liable for Roche's purported surveillance activities involving the nursery monitor. The district court reasoned that Delchamps was entitled to summary judgment as a matter of law because Roche's purported surveillance activities involving the nursery monitor were beyond the course and scope of his employment. In reaching its conclusion, the district court provided no supporting case law. The district court also granted summary judgment to Delchamps regarding Benoit's complaint that her telephone calls were unlawfully monitored in violation of the Electronic Surveillance Act. In its oral reasons for judgment, the district court concluded that given the phone situation at Delchamps store # 106, Benoit could not have had any reasonable expectation of privacy concerning any phone calls received or made while at the store.

Delchamps' Vicarious Liability
Delchamps cites two federal cases, Malouche v. JH Management Co., Inc., 839 F.2d 1024 (4 Cir.1988) and Murphy v. City of Flagler Beach, 761 F.2d 622 (11 Cir.1985), to support the proposition that an employer cannot be found vicariously liable for an employee's unlawful surveillance activities unless the plaintiff proves that the employer also possessed "criminal willfulness" to violate the provisions of Louisiana's Electronic Surveillance Act by participating, encouraging, or procuring its employee to pursue these activities. However, Delchamps' argument is unpersuasive because neither Malouche nor Murphy directly supports this proposition or addresses the distinct issue of an employer's vicarious liability pursuant to Louisiana law. For example, in one paragraph of an opinion spanning nine pages, the court in Murphy concluded that an employer was not vicariously liable for an employee's unlawful surveillance activities under Florida law. Murphy, 761 F.2d at 630.
Notwithstanding Malouche and Murphy or the existence of other persuasive and non-controlling federal authority discussing vicarious liability as it relates to an employee's unlawful surveillance activities, Delchamps' vicarious liability should be resolved using existing mandatory authority governing vicarious liability in Louisiana. Therefore, before reaching any conclusion with regard to Delchamps' vicarious liability for its store manager's alleged violations of the Electronic Surveillance Act, we must examine our own civil law and provide careful reference to our distinct civilian tradition before blindly grasping case law from another sovereignty to quickly dispose of this issue.
In Louisiana, vicarious liability is based upon Civil Code Article 2320, which appears as follows:
Art. 2320. Acts of servants, students or apprentices
Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
Teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendence.
In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it.

*578 The master is answerable for the offenses and quasi-offenses committed by his servants, according to the rules which are explained under the title: Of quasi-contracts, and of offenses and quasi-offenses.

The historical origins of vicarious liability and respondeat superior are derived from Roman law and are well rooted in civilian tradition. According to the civilian tradition of vicarious liability, the responsibility of a master for the acts of his servants was premised upon the master's choice of that servant or his lack of surveillance of that servant. See Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (1968) (citing Planiol, Pothier, Roscoe Pound, and O.W. Holmes).
The seminal case in Louisiana interpreting vicarious liability is LeBrane v. Lewis, 292 So.2d 216 (La.1974). In LeBrane, Justice Tate held that an employer was vicariously liable for the acts of an employee who stabbed and seriously injured another co-employee. In reaching his decision, Justice Tate applied the following factors to determine whether the employer was vicariously liable:
(1) whether the tortious act was primarily employment rooted;
(2) whether the act was reasonably incidental to the performance of the employee's duties;
(3) whether the act occurred on the employer's premises; and
(4) whether it occurred during the hours of employment.
Id.
However, while the LeBrane test contains four factors, it is not necessary that all four factors be strictly met in order to find vicarious liability. Miller v. Keating, 349 So.2d 265 (La.1977) (reversing our decision at 339 So.2d 40 (La.App. 3 Cir.1976)). Notably, not one of the four factors listed in LeBrane relies upon an employer's own tortious conduct or knowledge of its employee's tortious conduct to establish vicarious liability. However, casting an employer with vicarious liability is not subject to a bright line rule "because of the unending contexts in which the question may arise." Orgeron v. McDonald, 93-1353, p. 4 (La. 7/5/94); 639 So.2d 224, 226. Rather, applying vicarious liability to an employer-employee relationship is an important public policy decision similar to the rigorous analytical method used in determining negligence pursuant to the duty-risk analysis. See Ermert v. Hartford Ins. Co., 559 So.2d 467 (La.1990). Accordingly, we do not find that Delchamps was entitled to summary judgment as a matter of law based upon the Louisiana doctrine of respondeat superior for the plaintiffs' nursery monitor claim.

Plaintiffs' Telephone Monitoring Claim
In its oral reasons for summary judgment, the district court dismissed the plaintiffs' telephone monitoring claim against Delchamps because it concluded that the plaintiffs did not have a reasonable expectation of privacy concerning any phone calls received or made while at Delchamps store # 106. See La.R.S. 15:1302(14). The district court also implicitly found that any potential violations of the Electronic Surveillance Act by the management personnel at Delchamps store # 106 were exempted because they were done in the "ordinary course of its business." See La.R.S. 15:1302(10)(a)(i). However, because the record contains ample evidence showing that there are genuine issues of material fact with regard to both of the district court's conclusions, we believe that the district court erred when it granted Delchamps summary judgment for the plaintiffs' telephone monitoring claims. See Deal v. Spears, 980 F.2d 1153 (8 Cir.1992); cf. Watkins v. L.M. Berry & Co., 704 F.2d 577 (11 Cir.1983). This issue, as well as the nursery monitor issue, present genuine issues of material fact that are in dispute. Therefore, summary judgment was improper.

Decree
For the foregoing reasons, the judgment of the district court granting Delchamps summary judgment on the issues of the nursery monitor and telephone monitoring claims is hereby reversed and set aside. This case is remanded to the district court for further proceedings. Costs of trial to await the final *579 outcome. Costs of this appeal are assessed to the appellees.
REVERSED AND REMANDED.
BERTRAND, J., Pro Tem., dissents and assigns reasons.
BERTRAND[1], Judge, dissenting.
Because I believe the case before us presents no genuine issue of material fact, I dissent from the majority's reversal of the summary judgment granted in Delchamps' favor.
The trial judge dismissed the plaintiffs' claims of invasion of privacy and illegal surveillance against Delchamps. These claims were premised on principles of general tort law and on the civil remedy provision of the Electronic Surveillance Act, a criminal statute. See La.R.S. 15:1301, et seq., which criminalizes the willful interception of a communication in certain circumstances.
My review of the record reveals no factual dispute. The plaintiffs' invasion of privacy claims were based on allegations that their telephone conversations were monitored; however, in deposition testimony, one plaintiff specifically denied that any of her calls were monitored, and the other plaintiff said that she had no proof that her calls were monitored. Furthermore, even if proof of these allegations existed, such monitoring over a business telephone line would fall outside the scope of the Electronic Surveillance Act. See La.R.S. 15:1302(10)(a)(i).
The illegal surveillance claims arising from the nursery monitor incident also present no genuine issue of material fact concerning Delchamps' vicarious liability. The language of the Electronic Surveillance Act, in my view, requires a criminally willful act by the one against whom the cause of action is asserted in order for civil liability to attach. My view of La.R.S. 15:1312 is that the legislature intended to separate the proscribed conduct from the general law of vicarious liability and require actual criminal conduct by the civil defendant.
Cases interpreting similar statutes in other jurisdictions have likewise concluded that civil damages can be recovered only against one who violates the criminal statute. See Malouche v. JH Management Co., Inc., 839 F.2d 1024 (4th Cir.1988) and Murphy v. City of Flagler Beach, 761 F.2d 622 (11th Cir.1985). In my opinion, the majority too quickly dismisses the logic and rationale of this jurisprudence. The Murphy court focused on the knowledge of the employer, and the Malouche court discussed the willfulness of the employer's conduct. In the case before us, the trial judge discussed the action taken by Delchamps after the nursery monitor incident took place, which action consisted of an investigation and disciplinary proceedings. Delchamps had no knowledge of the manager's intention to use the monitor and did not sanction, authorize, or fund its use.
I certainly do not intend to suggest that we must "blindly [grasp] case law from another sovereignty." However, I find no harm in citing cases from other jurisdictions when they present appropriate analyses and conclusions based on very similar statutory provisions. Under the civilian tradition of our state, the courts are bound to look first at the will of the legislature in rendering decisions. Only then should the courts turn to the jurisprudence as secondary information. Following this procedure, I have studied the Electronic Surveillance Act, then reviewed the jurisprudence applying similar laws; I conclude the trial judge properly granted summary judgment in favor of Delchamps.
For these reasons, I dissent.
NOTES
[*] Judge Lucien C. Bertrand, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] Ron Biggs and Kenneth Ardoin, assistant managers at Delchamps store # 106, were dismissed from this suit and their dismissal has not been appealed.
[2] An unsophisticated electronic listening device that is commonly available to consumers and usually used by parents to monitor an infant or young child as he sleeps or plays alone in his crib. A nursery monitor usually consists of two basic parts, a radio transmitter and a radio receiver.
[3] LeDoux admitted in her deposition that her calls had never been monitored: "No, I never saw anyone listen to anyone's phone calls and my phone calls were never listened to."
[4] For a detailed background to the Louisiana and federal Electronic Surveillance Acts, see State v. Neisler, 94-1384 (La. 3/16/95); 655 So.2d 252 (cordless telephone transmissions are not protected "oral communications" under the Electronic Surveillance Act).
[5] Federal jurisprudence seemingly discourages the use of summary judgment as a tool to dismiss claims brought pursuant to 18 U.S.C. § 2520. See Walker v. Darby, 911 F.2d 1573 (11 Cir. 1990); Awbrey v. Great Atl. & Pac. Tea Co., 505 F.Supp. 604 (N.D.Ga.1980). The apparent reason for disfavoring summary judgment for unlawful surveillance claims is that the victims of unlawful surveillance have almost an insurmountable difficulty in obtaining direct evidence of a defendant's clandestine surveillance activities. Circumstantial evidence is often all that victims of unlawful surveillance are able to obtain because successful surveillance depends upon secrecy and concealment.
[1] Judge Lucien C. Bertrand, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.