732 So.2d 757 (1999)
Jo Ann DELPHIN, Born Landry, Individually and on Behalf of the Community Estate and Joseph Phillip Delphin, Jr., Plaintiff-Appellant,
v.
Bryan A. MONTEALEGRE, et al., Defendants-Appellees.
No. 98-700.
Court of Appeal of Louisiana, Third Circuit.
April 7, 1999.
Writ Denied July 2, 1999.
*758 Mark Anthony Delphin, Lake Charles, Eulis Simien Jr., Baton Rouge, for Jo Ann Delphin etc.
Robert Leon Ellender, Lafayette, for Credit Bureau of Baton Rouge, Inc.
BEFORE: DOUCET, C.J., THIBODEAUX, SAUNDERS, WOODARD, and PETERS, Judges.
THIBODEAUX, Judge.
This suit arises out of an automobile accident involving Jo Ann Delphin and Bryan A. Montealegre on May 17, 1994. Delphin filed suit against Montealegre's employer, the Credit Bureau of Baton Rouge (hereinafter "Credit Bureau"), under a theory of vicarious liability, alleging that Montealegre was acting in the course and scope of his employment at the time of the accident. The Credit Bureau moved for summary judgment, alleging that it *759 was not vicariously liable. Finding no genuine issues of material fact, the trial court granted the Credit Bureau's motion for summary judgment. For the reasons which follow, we reverse the trial court's judgment and remand the matter for further proceedings.

I.

ISSUE
We shall consider whether a genuine issue of material fact exists as to whether Montealegre was acting in the course and scope of his employment at the time the accident occurred.

II.

FACTS
In 1994, Montealegre was employed by the Credit Bureau as a salaried employee whose duties included marketing, outside sales, presentations, and training. Although making outside sales required travel, the Credit Bureau did not provide Montealegre with transportation. Instead, the Credit Bureau reimbursed Montealegre for actual miles traveled on company business. Montealegre was required to sign a driving agreement which stipulated that he would not drive any automobile on company business that did not meet the legal standards for insurance, maintenance, and driveability.
On the morning of May 17, 1994, Montealegre allegedly obtained permission to take the morning off to complete several errands. The accident occurred while Montealegre was en route to obtain an automobile inspection sticker. Montealegre did not make any sales calls for the Credit Bureau either before or after the accident. Moreover, he did not receive reimbursement from the Credit Bureau for the mileage traveled to obtain the inspection sticker or for the cost of the sticker. Considering these facts, the trial court found that Montealegre was not acting in the course and scope of his employment at the time the accident occurred.

III.

LAW AND ARGUMENT

Standard of Review
Appellate courts review summary judgments de novo, under the same criteria which governs the trial court's consideration of whether summary judgment is appropriate. Benoit v. Roche, 94-715 (La. App. 3 Cir. 6/14/95); 657 So.2d 574. A motion for summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B).
The burden of persuasion remains always with the mover to show that no material issues of fact exist. La.Code Civ.P. art. 966(C). The mover must present supportive evidence that the motion for summary judgment should be granted. Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96); 685 So.2d 691, writ denied, 97-0281 (La.3/14/97); 690 So.2d 41. Once the mover has made a prima facie showing that the motion for summary judgment should be granted, the burden of production shifts to the nonmoving party to present evidence demonstrating the existence of issues of material fact which preclude summary judgment. Id.

Course and Scope of Employment
An employer is answerable for the damage occasioned by its employees in the exercise of the functions in which they are employed. La.Civ.Code art. 2320. This vicarious liability extends only to the employee's tortious conduct occurring while the employee is acting within the course and scope of his employment. Reed v. House of Decor, Inc., 468 So.2d 1159 (La.1985). Generally, an employee is *760 acting within the course and scope of his employment where his conduct is "so closely connected ... [in] time, place, and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests." LeBrane v. Lewis, 292 So.2d 216, 218 (La.1974). The following factors are relevant to this inquiry:
payment of wages by the employer, the employer's power of control, the employee's duty to perform the particular act, the time, place and purpose of the act in relation to service of the employer, the relationship between the employee's act and the employer's business, the benefits received by the employer from the act, the motivation of the employee for performing the act, and the reasonable expectation of the employer that the employee would perform the act.
Reed, 468 So.2d at 1161.
In this case, to support its motion for summary judgment, the Credit Bureau submitted the affidavit of Tamra Gaughf, Montealegre's supervisor. Gaughf stated that she had granted Montealegre's request to take the morning off to complete various errands. The Credit Bureau also emphasizes that in his deposition, Montealegre admitted that he did not seek reimbursement for the mileage expended in obtaining his inspection sticker or for the cost of the sticker. Moreover, it contends that Montealegre was not acting in the course and scope of his employment when the accident occurred because Montealegre was performing a personal errand which was not a risk of harm attributable to the Credit Bureau's business.
Montealegre contends that a genuine issue of material fact exists as to whether he was acting in the course and scope of his employment at the time the accident occurred. A representative of the Credit Bureau, John Albert, testified in deposition that each year, Montealegre was required to sign a driving agreement which stipulated that he "would not drive any vehicle on Company business which does not meet legal standards for insurance, maintenance, or driveability." In light of this agreement, Montealegre contends that he was obligated by his employment duties to obtain an inspection sticker so that his vehicle would comply with the legal standards set forth in the driving agreement.
Upon our review of the record, we conclude that a genuine issue of material fact exists as to whether Montealegre was acting in the course and scope of his employment when the accident occurred. Although Montealegre was operating his own vehicle and was not reimbursed for obtaining his inspection sticker, we find that a genuine issue of material fact exists with regard to whether Montealegre's errand was closely related to his employment duties. In particular, several of the factors articulated in Reed indicate that a genuine issue of material fact exists.
First, Montealegre contends that he had a duty to obtain his inspection sticker because he signed the driving agreement which required that he maintain his vehicle in compliance with certain legal standards. Thus, there was a close relationship between his act of obtaining the inspection sticker and the Credit Bureau's business. In addition, Montealegre asserts that his motivation for obtaining the inspection sticker was to comply with the obligation he incurred when he signed the driving agreement. Moreover, because the Credit Bureau required that its employees sign the driving agreement, it had a reasonable expectation that Montealegre would obtain the inspection sticker for his vehicle. Finally, Montealegre asserts that the Credit Bureau benefitted from his action of obtaining the inspection sticker because his outside sales duties required traveling. As Montealegre could not operate a vehicle on company business unless the vehicle complied with certain legal standards, it was necessary that he obtain the inspection *761 sticker in order to perform his employment duties.
In light of these considerations, it is clear that a genuine issue of material fact exists regarding the relationship between Montealegre's errand and his employment duties. The existence of this unresolved issue precludes summary judgment.

IV.

CONCLUSION
Based on the foregoing reasons, the judgment of the trial court is reversed and the case is remanded for further proceedings. Costs of the appeal are assessed to the Credit Bureau of Baton Rouge.
REVERSED AND REMANDED.
DOUCET, C.J., DISSENTS AND ASSIGNS WRITTEN REASONS.
DOUCET, C.J., dissenting.
I would affirm the judgment of the trial court dismissing the Plaintiffs' claims against the Credit Bureau of Baton Rouge pursuant to a motion for summary judgment. After reviewing the record herein, I am convinced that there is no issue of fact remaining but that Montealegre was not in the course and scope of his employment at the time of the accident. Montealegre's deposition testimony and the affidavit of Tamra Gaughf, Montealegre's supervisor, present evidence that Montealegre had taken leave on the morning of May 17, 1994. The appellant has failed to respond to the Credit Bureau's evidence that Montealegre had taken off the morning of May 17, 1994, with evidence that Montealegre was "on the clock." He did not go to work at all and did not perform work related sales calls. He was not on call and intended to perform only personal errands. In this case Montealegre's conduct was "instituted by purely personal considerations entirely extraneous to the employer's interest." Baumeister v. Plunkett, 95-2270, p. 3 (La.5/21/96); 673 So.2d 994, 996, citing LeBrane v. Lewis, 292 So.2d 216, 217-18 (La.1974). Although Montealegre signed an agreement in which he assured his employer that he would not drive an automobile on company business that did not meet legal standards for insurance, maintenance, or driveability, it is Louisiana law, not the employment contract, which mandates that Montealegre obtain the automobile inspection sticker.
Therefore, I respectfully dissent from the finding of the majority herein.